ROGER FRANTZ *v.* UNITED STATES FLEET
LEASING, INC., ET AL.

WILLIAM GRABEK ET AL. *v.* UNITED STATES
FLEET LEASING, INC., ET AL.

BARBARA KELSEY *v.* UNITED STATES
FLEET LEASING, INC., ET AL.
(SC 15784)

Callahan, C. J., and Borden, Katz, Palmer and McDonald, Js.

Argued February 17—officially released July 28, 1998

*Philip T. Newbury, Jr.,* for the appellants (defendants).

*Michael Jainchill,* with whom, was *Kathryn Calibey,* for the appellees (plaintiffs in the first and second cases).

*Susan M. Phillips,* for the appellee (plaintiff in the third case).

*Jon S. Berk* and *Claudia A. Baio* filed a brief for the Connecticut Defense Lawyers Association as amicus curiae.

*Opinion*

PALMER, J. These consolidated appeals require us to determine the proper application of General Statutes (Rev. to 1991) § 38a-336 (a) (2)[1] to a written request

---

[1] General Statutes (Rev. to 1991) § 38a-336 (a) (2) provides in relevant part: "Notwithstanding any provision of this section to the contrary, each automobile liability insurance policy issued or renewed on and after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily

for a reduction in uninsured motorist coverage[2] under a commercial fleet automobile liability insurance policy.[3] Specifically, we must decide whether such a request was effective in this case even though the request form

injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount . . . . Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by the insured." Hereafter, all references to § 38a-336 (a) (2) are to the 1991 revision.

Section 38a-336 (a) (2) was amended by Public Acts 1993, No. 93-297, § 1, which provides in relevant part: "Notwithstanding any provision of the section to the contrary, each automobile liability insurance policy issued or renewed on and after [July 1, 1984] THE EFFECTIVE DATE OF THIS ACT, shall provide uninsured AND UNDERINSURED motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless [the] *ANY NAMED insured* requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by [the] *ANY NAMED insured*. NO SUCH WRITTEN REQUEST FOR A LESSER AMOUNT SHALL BE EFFECTIVE UNLESS *ANY NAMED INSURED* HAS SIGNED AN INFORMED CONSENT FORM WHICH SHALL CONTAIN: (A) AN EXPLANA-TION OF UNINSURED AND UNDERINSURED MOTORIST INSURANCE APPROVED BY THE COMMISSIONER; (B) A LIST OF UNINSURED AND UNDERINSURED MOTORIST COVERAGE OPTIONS AVAILABLE FROM THE INSURER; AND (C) THE PREMIUM COST FOR EACH OF THE COVER-AGE OPTIONS AVAILABLE FROM THE INSURER. SUCH INFORMED CON-SENT FORM SHALL CONTAIN A HEADING IN TWELVE-POINT TYPE AND SHALL STATE: 'WHEN YOU SIGN THIS FORM, YOU ARE CHOOSING A REDUCED PREMIUM, BUT YOU ARE ALSO CHOOSING NOT TO PUR-CHASE CERTAIN VALUABLE COVERAGE WHICH PROTECTS YOU AND YOUR FAMILY. IF YOU ARE UNCERTAIN ABOUT HOW THIS DECISION WILL AFFECT YOU, YOU SHOULD GET ADVICE FROM YOUR INSURANCE AGENT OR ANOTHER QUALIFIED ADVISOR.' " (Emphasis added.)

[2] Throughout this opinion, the term uninsured motorist coverage also encompasses underinsured motorist coverage. See *Rydingsword* v. *Liberty Mutual Ins. Co.*, 224 Conn. 8, 14 n.11, 615 A.2d 1032 (1992).

[3] A fleet insurance policy "refer[s] to any insurance policy designated as a 'fleet' or 'garage' policy, or any insurance policy covering a number of vehicles owned by a business, a governmental entity, or an institution." *Cohn* v. *Aetna Ins. Co.*, 213 Conn. 525, 530, 569 A.2d 541 (1990).

did not contain the signatures of all of the named insureds under the policy. We conclude that the reduction request was effective.

The relevant facts and procedural history are undisputed. On September 11, 1992, the plaintiffs Roger Frantz, Barbara Kelsey and William Grabek,[4] employees of the Electric Boat Division of General Dynamics Corporation (General Dynamics), and participants in a work van pool program, were injured when an automobile driven by Robert Nowosad (tortfeasor) struck the van in which they were riding. The van, which was owned by the named defendant, United States Fleet Leasing, Inc. (Fleet Leasing), and which was leased to General Dynamics, was insured under an automobile liability insurance policy that had been issued by the defendant Insurance Company of North America (INA) to General Dynamics. The vehicle driven by the tortfeasor was insured under a liability policy that had been issued to the vehicle's owner, John Nowosad (Nowosad),[5] with liability limits of $100,000 per accident.

Under the terms of the lease agreement between Fleet Leasing and General Dynamics,[6] General Dynamics agreed to maintain liability coverage of at least $1 million on the leased vehicles, as well as collision coverage, and to designate Fleet Leasing as an additional insured under the policy.[7] The lease agreement was silent with

[4] William Grabek's wife, Robin F. Grabek, who seeks damages for loss of consortium, also is a plaintiff in this action. Hereafter, all references to "Grabek" in this opinion are to William Grabek.

[5] John Nowosad is Robert Nowosad's father.

[6] Both Fleet Leasing and General Dynamics are large corporations with their own legal and risk management departments.

[7] The lease contract, dated January 28, 1976, provided in relevant part: "Lessee, for each Vehicle and for any other vehicles provided by Lessor for Lessee's use, shall provide and maintain in full force and effect, at Lessee's expense, a policy of primary coverage insurance written by a company satisfactory to Lessor by the terms of which Lessee is named as the 'Insured' and Lessor is named as an 'Additional Insured' and both are protected against: (i) liability and/or loss arising out of the condition, use or operation

respect to uninsured motorist coverage. Fleet Leasing, however, relied on General Dynamics to arrange for uninsured motorist coverage in those jurisdictions where such coverage was required, including Connecticut; see General Statutes (Rev. to 1991) § 14-112 (a);[8] and authorized General Dynamics to designate the level of such coverage. Pursuant to this understanding, a representative of General Dynamics completed and signed a "selection form" for Connecticut uninsured motorist coverage, choosing the minimum amount.[9]

The INA policy covered approximately 2208 private passenger vehicles that were either owned or leased by General Dynamics and that were located in various states. The policy provided liability coverage of $2 million per accident and, in accordance with General Dynamics' election, a "minimum" level of uninsured motorist coverage. A schedule depicting the minimum level of uninsured motorist coverage required in various states, which appeared in an endorsement to the policy, showed minimum uninsured motorist coverage in Connecticut of $40,000 per accident.[10] The declarations sec-

of each Vehicle in the amount of not less than $1,000,000.00 single limit (or such greater amount as may be required by law) for bodily injury and property damage; (ii) loss to vehicles caused by collision or upset . . . ."

[8] General Statutes (Rev. to 1991) § 14-112 (a) provides in relevant part: "To entitle any person to receive or retain a motor vehicle operator's license or a certificate of registration of any motor vehicle . . . the commissioner shall require from such person proof of financial responsibility to satisfy any claim for damages by reason of personal injury to, or the death of, any one person, of twenty thousand dollars, or by reason of personal injury to, or the death of, more than one person on account of any accident, of at least forty thousand dollars . . . ."

[9] The form contained the following language: "REDUCED LIMITS: I/We wish to reject Uninsured Motorists insurance at limits equal to the policy Bodily Injury Liability limits and select instead limit(s) of liability, specified as follows, which are less than the policy Bodily Injury Liability limit(s), but not less than the limits of the Connecticut Financial Responsibility Law:

"Combined Single Limit amount of $Minimum Bodily Injury each accident . . . ."

[10] The endorsement also provided that "any statutory change in the Mandatory Minimum Uninsured Motorists Limits shall be automatically afforded by the policy."

tion of the policy listed General Dynamics as the named insured. The term "named insured," however, was expanded by endorsement to include, subject to certain limitations, various subsidiaries, affiliates and joint ventures of General Dynamics, the United States of America and "any other person or organization for which [General Dynamics] has agreed in writing to provide insurance . . . ."[11]

Frantz, Kelsey and Grabek commenced separate actions against the tortfeasor, seeking damages for injuries sustained as a result of the accident. After a trial in July, 1995, the trial court determined that the tortfeasor was solely responsible for the plaintiffs' injuries and rendered judgment in their favor as follows: Frantz, $1,300,000; Kelsey, $750,000; and Grabek, $650,000. Nowosad's insurer paid a total of $100,000, thereby exhausting the liability limits of Nowosad's policy.[12]

---

[11] The endorsement provided in relevant part: "The term 'Named Insured' includes in addition to the person or organization named in the Declarations: General Dynamics . . . and/or any subsidiary, affiliated, associated, owned or controlled company, including Material Service Corporation and its subsidiaries, as previously now, or hereafter constituted in which General Dynamics . . . has 51% or more ownership interest . . . and any other person or organization for which Named Insured has agreed in writing to provide insurance; and

"The United States of America but only with respect to operations performed by the Named Insured under written contracts entered into by and between the Named Insured and the United States of America, and where by virtue of the terms of the contract the Named Insured is obligated to provide insurance such as [is] afforded by this policy; and any joint venture of which the insured was or is a partner or member provided that:

"1. The Joint Venture is controlled by the Named Insured, or

"2. The Named Insured is the operating interest, or

"3. The Named Insured is obligated under the terms of the written contract to provide coverage; and

"Any partner, executive officer, director [or] stockholder thereof while acting within the scope of his duties and/or while acting on behalf of the Named Insured . . . ."

[12] Frantz, Kelsey and Grabek each received a share of the $100,000 in an amount proportionate to his or her damages award as follows: Frantz, $48,000; Kelsey, $28,000; and Grabek, $24,000.

The plaintiffs also commenced these separate actions against Fleet Leasing and INA seeking underinsured motorist benefits under the policy issued by INA to General Dynamics.[13] These actions were subsequently consolidated.

The defendants filed a motion for summary judgment as to Grabek's complaint, claiming that: (1) his exclusive remedy was workers' compensation;[14] and (2) because General Dynamics had elected uninsured motorist coverage of $40,000, the tortfeasor's vehicle was not an "underinsured motor vehicle" within the meaning of General Statutes (Rev. to 1991) § 38a-336 (d).[15] The court denied the defendants' motion.

Thereafter, the plaintiffs moved for summary judgment, claiming that: (1) under our decision in *Nationwide Mutual Ins. Co.* v. *Pasion,* 219 Conn. 764, 594 A.2d 468 (1991),[16] General Dynamics' election of lower

---

[13] Frantz, Kelsey and Grabek also sought underinsured motorist benefits under their respective personal automobile insurance policies. On September 30, 1996, judgment in the amount of $129,000 was rendered in favor of Kelsey in her suit against Peerless Insurance Company. Frantz' action against Allstate Insurance Company and Grabek's action against Automobile Insurance Company of Hartford were consolidated with the present cases. Those two actions have been stayed pending the outcome of this appeal.

[14] Because it was determined that Frantz, Kelsey and Grabek were acting within the scope of their employment at the time of the accident, they were awarded workers' compensation benefits for their injuries. Kelsey was also collecting social security disability benefits.

[15] General Statutes (Rev. to 1991) § 38a-336 (d) provides: "For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subsection (b) of this section." Hereafter, all references to § 38a-336 (d) are to the 1991 revision.

[16] In *Pasion,* we held that, under General Statutes (Rev. to 1989) § 38-175c (a) (2), a written request to reduce uninsured motorist coverage signed by only one of two named insureds under an automobile liability insurance policy was ineffective to reduce the uninsured motorist benefits available to a third party who had been injured in an accident while riding as a passenger in a vehicle covered under that policy. *Nationwide Mutual Ins.*

uninsured motorist coverage was invalid because it had not been signed by Fleet Leasing, a named insured, and, consequently, the uninsured motorist coverage under the policy was equal to the liability limit of $2 million; and (2) because the issue of damages had been decided in the earlier action against the tortfeasor, the doctrine of collateral estoppel precluded the defendants from relitigating that issue. The defendants filed cross motions for summary judgment, asserting that General Dynamics' election of reduced uninsured motorist limits was binding because § 1 of No. 93-297 of the 1993 Public Acts, as it amended subsection (a) (2) of § 38a-336 (hereafter P.A. 93-297, § 1 [a] [2]); see footnote 1 of this opinion; clarified existing law and, therefore, applied retroactively to permit any one of several named insureds under the policy to request and obtain such a reduction. The defendants alternatively claimed that even if P.A. 93-297, § 1 (a) (2) did not apply retrospectively, our holding in *Pasion*; see footnote 16 of this opinion; was inapplicable to this case and, thus, the plaintiffs were bound by General Dynamics' election of $40,000 in uninsured motorist coverage. The trial court granted the plaintiffs' motions for summary judgment, concluding that: (1) P.A. 93-297, § 1 (a) (2) does not apply retroactively, and, therefore, the plaintiffs were entitled to uninsured motorist coverage of $2 million under our decision in *Pasion* because Fleet Leasing, a named insured, had failed to submit a written request for a reduction in such coverage; (2) the defendants were collaterally estopped from relitigating the issue of damages; and (3) the defendants were not entitled to a setoff for the social security disability benefits paid and payable to Kelsey. The trial court therefore awarded

*Co.* v. *Pasion,* supra, 219 Conn. 771. Section 38-175c (a) (2) was recodified at § 38a-336 (a) (2) in the General Statutes as revised to 1991. The statutory language that we construed in *Pasion* is virtually identical to the statutory language at issue in this case.

damages to the plaintiffs in accordance with the judgment that had previously been rendered in their favor against the tortfeasor, subject to applicable credits, setoffs and interest. Following a hearing on the issue of setoffs for workers' compensation and social security disability benefits, the court rendered judgment for the plaintiffs as follows: Frantz, $722,898.95; Kelsey, $407,664.43; and Grabek, $396,824.91.[17] The defendants appealed from the judgment of the trial court to the Appellate Court, and we granted the plaintiffs' motions to transfer the consolidated appeals to this court pursuant to Practice Book § 4024, now Practice Book § 65-2, and General Statutes § 51-199 (c).

The defendants claim that the trial court improperly concluded that Fleet Leasing's failure to submit a written request for reduction of uninsured motorist coverage rendered General Dynamics' election of such coverage ineffective in light of our decision in *Pasion*.[18] The plaintiffs assert that the trial court properly determined that *Pasion* applies to this case. We conclude that General Dynamics' election of $40,000 uninsured motorist coverage was effective and, therefore, the tortfeasor's vehicle was not an underinsured vehicle at the

[17] The court allocated the policy's $2 million in underinsured motorist coverage as follows:

Frantz: pro rata share of $960,000, minus $48,000 received from the tortfeasor and $189,101.05 in workers' compensation benefits.

Kelsey: pro rata share of $560,000, minus $28,000 received from the tortfeasor and $124,335.57 in workers' compensation benefits.

Grabek: pro rata share of $480,000, minus $24,000 received from the tortfeasor and $59,175.09 in workers' compensation benefits.

The court disallowed a setoff against the $29,487 of social security disability benefits to which the parties had stipulated with respect to Kelsey.

[18] The defendants also claim, contrary to the determination of the trial court, that P.A. 93-297, § 1 (a) (2) has retrospective applicability. In *Colonial Penn Ins. Co.* v. *Bryant*, 245 Conn. 710, 723, 714 A.2d 1209 (1998), we today have concluded that P.A. 93-297, § 1 (a) (2) is not retroactive. Accordingly, we reject the defendants' contention regarding the retrospective effect of that provision.

time of the accident. Accordingly, we reverse the judgment of the trial court.[19]

"The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 384 [now Practice Book § 17-49]." (Internal quotation marks omitted.) *Peerless Ins. Co.* v. *Gonzalez*, 241 Conn. 476, 481, 697 A.2d 680 (1997). The sole issue that we must decide is whether, as a matter of law, the construction of § 38-175c (a) (2)—recodified at § 38a-336 (a) (2) in the General Statutes as revised to 1991[20]—that we articulated in *Nationwide Mutual Ins. Co.* v. *Pasion*, supra, 219 Conn. 771, applies to the different factual scenario presented by this case. Consequently, our review is plenary. *Charles* v. *Charles*, 243 Conn. 255, 258, 701 A.2d 650 (1997), cert. denied, 523 U.S. 1136, 118 S. Ct. 1838, 140 L. Ed. 2d 1089 (1998).

In *Pasion*, "we determined that, under § 38-175c (a) (2), a request for a reduction in uninsured motorist benefits by Carlos Londono, who, along with his wife, Alexis, was a named insured on an automobile liability

[19] The plaintiffs have also asserted certain claims regarding the measure of damages payable under the policy, including the claim that the trial court properly determined that the defendants were not entitled to a setoff for the social security disability benefits paid and payable to Kelsey. We recently decided this latter issue in a manner contrary to the determination of the trial court. See *Vitti* v. *Allstate Ins. Co.*, 245 Conn. 169, 195, 713 A.2d 1269 (1998) (insurer is entitled to reduction in its liability limits for underinsured motorist coverage by amount equal to sum of social security disability benefits paid or payable to insured). The issue is moot, however, in light of our conclusion that the plaintiffs are not entitled to recover under the INA policy. It is also unnecessary for us to reach the plaintiffs' other claims regarding the proper measure of damages under that policy.

[20] See footnote 16 of this opinion.

policy issued to the Londonos by Nationwide Mutual Insurance Company, was not binding on a third party who was injured in an accident while riding as a passenger in a vehicle covered under the policy. [*Nationwide Mutual Ins. Co.* v. *Pasion*, supra, 219 Conn.] 771. In so holding, we concluded, first, that the requirement that any reduction in uninsured motorist coverage be requested in writing by the 'insured' was ambiguous because it was not clear, in the circumstances of that case, whether the term 'insured' referred to *any* named insured or to *all* named insureds. Id., 769." (Emphasis in original.) *Colonial Penn Ins. Co.* v. *Bryant*, 245 Conn. 710, 723, 714 A.2d 1209 (1998).

"We then reviewed the pertinent legislative history, and observed that [t]he apparent intent of the legislature in adopting [subdivision] (2) . . . was to assure that consumers purchasing automobile liability insurance would be made aware of the low cost of equal amounts of uninsured coverage by requiring any reduction in that coverage to be in writing. [*Nationwide Mutual Ins. Co.* v. *Pasion*, supra, 219 Conn.] 770–71. On the basis of our determination regarding the legislative intent, we concluded as follows: Although the named insureds on the policy involved in [the] case are husband and wife and by virtue of that personal relationship it could be assumed that Alexis Londono was both made aware of the availability of low-cost uninsured motorist coverage and acquiesced in the reduction sought by her husband, such an assumption is far from a certainty. We are even less certain that in situations where the joint owners of an automobile and named insureds on an automobile liability insurance policy are, for example, brother and sister, roommates, or friends, all of whom would be consumers, a conscious choice to reduce uninsured motorist coverage would have been made by all consumers when only one owner/named insured had signed the authorization for reduction in coverage. *To*

*permit the signature of one named insured to bind other, possibly uninformed, named insureds would circumvent the legislature's intent that the decision to reduce uninsured motorist coverage by consumers be an informed one. . . .* Id., 771." (Emphasis in original; internal quotation marks omitted.) *Colonial Penn Ins. Co.* v. *Bryant,* supra, 245 Conn. 723–25.

The defendants contend that the factual differences between *Pasion* and the present case warrant a different application of § 38a-336 (a) (2). Specifically, they argue that the policy considerations underlying the enactment of § 38a-336 (a) (2) that formed the basis of our holding in *Pasion* are inapplicable in the context of commercial fleet insurance. They claim, moreover, that to construe that statutory provision to require the written consent of all named insureds on a commercial fleet policy would place an unreasonable and unintended burden on insurers because, as in this case, the number of prospective insureds under a fleet policy is likely to be substantial. We agree.

"[O]ur fundamental objective in construing a statute is to ascertain and give effect to the apparent intent of the legislature . . . ." (Internal quotation marks omitted.) *Derwin* v. *State Employees Retirement Commission,* 234 Conn. 411, 420, 661 A.2d 1025 (1995). "Moreover, there is a presumption that the legislature intends to accomplish a reasonable and rational result rather than a difficult and possibly bizarre one." (Internal quotation marks omitted.) *State* v. *Burns,* 236 Conn. 18, 27, 670 A.2d 851 (1996). Accordingly, if there are two possible interpretations of a statute, we will adopt the construction "that bears directly on the purpose the legislature sought to achieve." *Coley* v. *Camden Associates, Inc.,* 243 Conn. 311, 319–20, 702 A.2d 1180 (1997).

Application of these well established principles of statutory construction leads us to conclude that the

legislature did not intend to require the written consent of all named insureds on a commercial fleet policy as a necessary prerequisite to a reduction in coverage. First, we are not persuaded that requiring Fleet Leasing to provide a written request for a reduction in uninsured motorist coverage under the INA policy would further the legislative goal of ensuring that consumers are informed of the relative cost of this type of insurance. Although a corporation like Fleet Leasing may be considered a "consumer" of insurance in the broadest sense of that word, we do not believe that a company that, like Fleet Leasing, is covered under a commercial fleet policy, falls within the class of consumers that the legislature sought to protect in requiring the signature of all named insureds under § 38a-336 (a) (2). Fleet Leasing, like many other large corporations covered under commercial fleet policies, has departments that specialize in legal and insurance matters. It is highly likely, therefore, that the Fleet Leasing personnel who negotiated the insurance provisions of the lease contract with General Dynamics were fully aware of the relative cost of uninsured motorist coverage and the implications of their decision to leave to General Dynamics the determination of the amount of uninsured motorist coverage.

Moreover, the primary legislative purpose in requiring a written request for a reduction in uninsured motorist coverage is to ensure that one named insured not be bound, to his or her detriment, by the unilateral decision of another named insured to seek such a reduction. See Colonial Penn Ins. Co. v. Bryant, supra, 245 Conn. 725 (under § 38-175c [a] [2], written request for reduction in uninsured motorist coverage submitted by one of two named insureds is effective when insured who signed reduction request form seeks uninsured motorist benefits). Such a concern has little or no applicability in the context of a commercial fleet policy. It may be presumed that Fleet Leasing's chief interest

in requiring General Dynamics to arrange for certain insurance coverage was to protect itself from exposure to liability and to safeguard the value of its vehicles. Fleet Leasing took steps to do that by incorporating into its lease contract with General Dynamics the requirements that General Dynamics procure collision and liability insurance and designate Fleet Leasing as an additional insured. Moreover, Fleet Leasing expressly left all matters pertaining to uninsured motorist coverage to General Dynamics. If Fleet Leasing had desired a particular level of uninsured motorist coverage, it could have bargained for the inclusion of such coverage in the lease in the same manner it did with liability and collision coverage.

Furthermore, strict adherence in this case to the rule that we deemed applicable in *Pasion* would have required the written consent not only of Fleet Leasing, but of all other named insureds on the policy, a result that is both unreasonable and impracticable. Under the terms of the endorsement to the policy, "named insured" includes any other person or organization for which General Dynamics had agreed in writing to provide insurance and, subject to certain limitations, the United States of America and various joint ventures of General Dynamics, as well as partners, executive officers and directors of those joint ventures. See footnote 11. Identifying all such persons and entities and securing their written consent to a reduction in uninsured motorist coverage would have created formidable administrative burdens for General Dynamics or its insurance underwriter, burdens that we believe it is most unlikely our legislature intended to impose under § 38a-336 (a) (2).

The conclusion that our holding in *Pasion* is inapplicable to commercial fleet policies finds support elsewhere in our jurisprudence relating to uninsured

motorist coverage. For example, although we had routinely upheld the stacking[21] of uninsured motorist coverage in the context of separate personal automobile insurance policies; see, e.g., *Safeco Ins. Co.* v. *Vetre*, 174 Conn. 329, 333–35, 387 A.2d 539 (1978); *Pecker* v. *Aetna Casualty & Surety Co.*, 171 Conn. 443, 452–53, 370 A.2d 1006 (1976); and where a number of vehicles insured under one personal automobile policy were described separately and individual premiums were charged for each vehicle; see, e.g., *Dixon* v. *Empire Mutual Ins. Co.*, 189 Conn. 449, 453, 456 A.2d 335 (1983); we had rejected principles of stacking under commercial fleet policies because of the fundamental difference between commercial fleet insurance, on the one hand, and personal automobile insurance, on the other. See, e.g., *Wilson* v. *Security Ins. Co.*, 213 Conn. 532, 535–36, 569 A.2d 40, cert. denied, 498 U.S. 814, 111 S. Ct. 52, 112 L. Ed. 2d 28 (1990), and cert. denied, 502 U.S. 1005, 112 S. Ct. 640, 116 L. Ed. 2d 658 (1991); *Cohn* v. *Aetna Ins. Co.*, 213 Conn. 525, 530, 569 A.2d 541 (1990); see also *Chmielewski* v. *Aetna Casualty & Surety Co.*, 218 Conn. 646, 668–72, 591 A.2d 101 (1991). Thus, we will not ignore the fact that commercial fleet insurance gives rise to a significantly different set of expectations and considerations than does personal automobile insur-

---

[21] "Stacking refers to the ability of the insured, when covered by more than one insurance policy, to obtain benefits from a second policy on the same claim when recovery from the first policy alone would be inadequate. . . . Intra-policy stacking is the aggregation of the limits of liability for uninsured-motorist coverage of each car covered in one policy, whereas inter-policy stacking involves the aggregation of coverage under more than one policy." (Citations omitted; internal quotation marks omitted.) *Nationwide Ins. Co.* v. *Gode*, 187 Conn. 386, 388–89 n.2, 446 A.2d 1059 (1982), overruled in part on other grounds, *Covenant Ins. Co.* v. *Coon*, 220 Conn. 30, 594 A.2d 977 (1991). "Stacking is a judicially adopted doctrine, never expressly mandated by our legislature." *Lash* v. *Aetna Casualty & Surety Co.*, 236 Conn. 318, 327 n.12, 673 A.2d 84 (1996). "In 1993, [however] the legislature enacted [P.A. 93-297] which, among other things, eliminated stacking of underinsured motorist coverage for all purposes." Id., 327.

ance.[22] In light of these considerations, and in the absence of any persuasive contrary argument or authority, we conclude that General Dynamics' election of $40,000 of uninsured motorist coverage was effective.

In view of this determination, the plaintiffs are not entitled to uninsured motorist benefits under the INA policy because the tortfeasor's automobile is not an "underinsured motor vehicle" within the meaning of § 38a-336. Section 38a-336 (d) defines that term as "a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subsection (b) of this section." Thus, under § 38a-336, "in determining whether a motor vehicle is 'underinsured' the total of all liability insurance coverage available to an individual claimant must be compared to the amount of underinsured motorist coverage in each of the policies against which the victim has a claim. If the total of the liability insurance is less than the uninsured motorist limits of the individual's policy, then the uninsured motorist coverage becomes applicable." *Covenant Ins. Co. v. Coon,* 220 Conn. 30, 34, 594 A.2d 977 (1991). Conversely, a claim is not triggered if the uninsured motorist limit of a particular policy is less than or equal to the liability insurance available. See *Farm & City Ins. Co. v. Stevens,* 215 Conn. 157, 160, 574 A.2d 1300 (1990) ("[s]ince

---

[22] Our conclusion also is consistent with our decision in *Colonial Penn Ins. Co. v. Bryant,* supra, 245 Conn. 710, also decided today, in which we eschewed a rigid application of the rule that we adopted in *Nationwide Mutual Ins. Co. v. Pasion,* supra, 219 Conn. 764, and concluded that, under § 38-175c (a) (2), a written request for a reduction in uninsured motorist coverage signed by only one of two named insureds is binding on the insured who signed the request form. In *Bryant,* as in this case, we determined that the policy considerations underlying the enactment of subsection (a) (2) militated against a construction of that provision that required the signatures of all of the named insureds. *Colonial Penn Ins. Co. v. Bryant,* supra, 725–26.

the liability limits were not less than the uninsured motorist limits, the [tortfeasor's] vehicle was not underinsured"). Moreover, if a claimant can assert a claim for uninsured motorist benefits under more than one policy, "the analysis directed by § 38a-336 requires a comparison between the aggregate of liability limits available to the victim against the underinsured motorist limits in *each single policy* against which the victim has a claim." (Emphasis added.) *Covenant Ins. Co.* v. *Coon*, supra, 36. See generally J. Berk & M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (1993) §§ 1.6 through 1.6.2, pp. 30–38.

In this case, the limit of the liability insurance available with respect to the tortfeasor's vehicle at the time of the accident was $100,000. We have concluded that because General Dynamics' election was effective, the plaintiffs are entitled to $40,000 worth of uninsured motorist coverage under the INA policy. In light of the fact that the tortfeasor's liability insurance exceeded the uninsured motorist limits of the policy, the tortfeasor's vehicle was not an underinsured vehicle within the meaning of § 38a-336 (d). The plaintiffs therefore have failed to establish a valid claim for uninsured motorist benefits under the INA policy.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment for the defendants.

In this opinion the other justices concurred.