[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Anthony Macchiaroli, was the owner of a residential rental property located at 20 Countryside Lane in Bantam, Connecticut. The plaintiff entered into a written lease for the property with the defendants, John Giannantoni, Sr. and Judy Giannantoni, for a term of one year beginning February 1, 1998, and ending January 31, 1999. The lease agreement also gave the defendants the option to purchase the property. On or about August 1, 1998, the defendants informed the plaintiff by telephone that they did not intend to purchase the property or remain in possession until the end of the lease. They vacated the property at the end of September, 1998. Accordingly, the plaintiff brought this civil action against the defendants claiming a balance due in the amount of $7,312.18, representing unpaid rent due under the lease, utility and oil expenses due to breach and attorney's fees, costs and interest.
The defendants, in their answer, assert two special defenses: (1) the plaintiff's failure to comply with the disclosure requirements of General Statutes § 20-327b in the lease/purchase option agreement preclude any recovery by the plaintiff under the agreement; (2) the lease agreement is unconscionable and unenforceable due to conditions that made the premises uninhabitable, unhealthy, and/or a health risk. The defendants further assert in their counterclaim that because the plaintiff did not return the full amount of the security deposit plus interest or provide a written statement itemizing the nature and amount of damages sustained within thirty days following termination of the tenancy, they are entitled to twice the amount of the security deposit plus interest pursuant to General Statutes § 47A-21(d)(2). The defendants six counterclaims, largely echoing their special defenses, state that: (1) they have suffered damages as a result of the plaintiff's failure to provide a written residential condition report, pursuant to General Statutes § 20-327b, upon execution of the lease/purchase option agreement; (2) failure to return the security deposit plus interest or a written itemization of the nature and amount of damages claimed, pursuant to General Statutes § 47a-21 (d)(2), entitles defendants to twice the amount of the security deposit, plus interest; (3) the plaintiff breached the covenant of good faith and fair dealing that is part of the lease agreement by failing to provide to the defendants clean, CT Page 1688 habitable, healthy and otherwise suitable premises for occupancy; (4) the actions of the plaintiff constitute intentional infliction of emotional distress and that the defendant has been debilitated by such; (5) the actions of the plaintiff constitute negligent infliction of emotional distress and that the plaintiff has been debilitated by such; and, (6) the conduct of the plaintiff constitutes unfair or deceptive acts or practices in violation of CUTPA, General Statutes § 42-110b, et seq., and the defendants have suffered loss of money and/or property due to the plaintiff's conduct and they accordingly seek punitive damages as well as an award of reasonable attorneys' fees and costs.
The lease is not rendered unenforceable by the plaintiff's failure to comply with General Statutes § 20-327b (a). Section 20-327b (a) states in relevant part that: "[e]xcept as otherwise provided in this section, each person who offers residential property in the state for sale, exchange or for lease with option to buy, shall provide a written residential condition report to the prospective purchaser at any time prior to the prospective purchaser's execution of any binder, contract to purchase, option, or lease containing a purchase option. . . ." The residential condition report requirement is for the benefit of prospective purchasers of residential property. The statute logically affords the same protection to lessees with purchase options as to those who purchase residential property without first leasing it. See id. General Statutes § 20-327c imposes a penalty for failure to provide the residential condition report required by § 20-327b (a), stating: "[o]n or after January 1, 1996, every agreement to purchase residential real estate, for which a written residential condition report is required pursuant to section 20-327b, shall include a requirement that the seller credit the purchaser with the sum of three hundred dollars at closing should the seller fail to furnish the written residential condition report as required by sections 20-327b to 20-327e, inclusive." This penalty encourages compliance with the written condition report requirement of § 20-327b (a). There is no indication in the language of the statute that failure to comply with § 20-327b (a) would additionally render a sales contract unenforceable, much less a lease containing a purchase option that is not even being exercised. An examination of the discussions in the legislature prior to the passage of these statutes demonstrates a desire to facilitate sales of residential real estate, not to hinder them by creating an opportunity to rescind valid contracts. See 38 H.R. Proc., Pt. 19, 1995 Sess., CT Page 1689 p. 6966 ("[t]his bill will help to resolve many problems and mis-communications which frequently complicate and sometimes prevent residential closings from going forward . . . "); Conn. Joint Standing Committee Hearings, Insurance and Real Estate, Pt. 1, 1995 Sess., p. 40 ("[in states where a disclosure form is required, it] has provided to be a useful tool to sellers and buyers and has even helped facilitate the sale of homes . . . "). Furthermore, as in the present case where the defendant questions the enforceability of a lease based on the report requirement, it is hardly imaginable that the legislature would have intended to provide greater protection under this statute to a lessee of residential real estate than a purchaser. "[T]here is a presumption that the legislature intends to accomplish a reasonable and rational result. . . ." Frantz v. United StatesFleet Leasing, Inc., 245 Conn. 727, 738, 714 A.2d 1222 (1998).
The lease is also not unenforceable due to unconscionability. "The classic definition of an unconscionable contract is one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." (Internal quotation marks omitted.) Smith v.Mitsubishi Motors Credit of America, Inc., 247 Conn. 342, 349,721 A.2d 1187 (1998). "If a contract or term thereof is unconscionable at the time a contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result." 2 Restatement (Second), Contracts § 208, p. 107 (1981). In support of their claim of unconscionability, the defendants submitted documentary evidence at trial indicating that water collected from the kitchen tap on August 10, 1998, was unsafe for drinking. (Defendants' exhibit 6.) The defendants also allege other health hazards on the property including bat infestation and sewage problems. The defendants fail, however, to prove the plaintiff's knowledge of the existence of these problems at the time the contract was made, a requirement of a finding of unconscionability. See 2 Restatement (Second), supra, § 208: Furthermore, the condition of the drinking water, the only potential health hazard for which adequate proof was provided, had obviously been corrected within two weeks of receiving the unfavorable report. (See Defendants' exhibit 5.)
The defendants are not entitled to twice the value of the security deposit. A landlord is required to return to a tenant, CT Page 1690 within 30 days of termination of the tenancy, the full amount of the security deposit plus interest. See General Statutes §47a-21 (d)(2). In the alternative, the landlord must provide a written statement itemizing the nature and amount of damages for which some or all of the security deposit and interest is being withheld within the same time constraints. Id. A landlord who fails to comply with the statute will be liable to the tenant for twice the value of the security deposit. Id. These duties of the landlord under the statute are triggered when the tenant notifies the landlord in writing of the tenant's forwarding address. Id. Therefore, the question is whether "the security deposit [was] returned with interest, or a written notification of damages delivered, within thirty days of the tenant's termination. . . ."Kufferman v. Fairfield University, 5 Conn. App. 118, 122,497 A.2d 77 (1985). The defendants in the present case provided a forwarding address to the plaintiff in a letter dated September 28, 1998. The plaintiff sent a letter to the defendant dated October 23, 1998, that states in pertinent part: "[a]s a result of your default under section 13) and 16) of the lease agreement, I am withholding the $1800.00 security deposit plus interest, for 5 months unpaid rent, damage to the property, expenses for rerenting, expenses for repair, and other associated costs." (Defendants' exhibit 2.) This letter sufficiently provides the nature of the damages suffered by the plaintiff as the result of the tenant's breach. The statute is not violated if the landlord fails to provide the cost of each individual item for which damage is claimed as long as the list of damages is particular.Martinick v. Rothman, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 063914 (November 16, 1992, Holzberg, J.).
The defendant has not proven that the plaintiff failed to mitigate damages. General Statutes § 47a-11a provides that: "(a) If the tenant abandons the dwelling unit, the landlord shall make reasonable efforts to rent it at a fair rental in mitigation of damages. (b) If the landlord fails to use reasonable efforts to rent the dwelling unit at a fair rental, the rental agreement is deemed to be terminated by the landlord as of the date the landlord has notice of the abandonment." "In a breach of contract action, the defendant bears the burden of proving that the plaintiff failed to exercise reasonable care to mitigate damages." (Internal quotation marks omitted.) Dematteo v.Villano, Superior Court, judicial district of New Haven, Housing Session, Docket No. 047493 (July 10, 1997, Levin, J.) (20 Conn. L. Rptr. 131, 131-32); Preston v. Keith, 217 Conn. 12, 20-21 n. CT Page 1691 9, 584 A.2d 439 (1991). The plaintiff in this case has presented evidence of advertisements taken in an effort to re-rent the property. The defendants in this case have failed to prove that the plaintiff did not exercise reasonable care by placing rental advertisements in the Bargain News. See id.
The defendant has not proven that the premises were unfit and uninhabitable. The only credible evidence of a potentially serious problem on the property was the report on the condition of the well water. This problem was corrected within approximately two weeks' time. Furthermore, the defendants chose to remain in possession of the property for over one and a half months following documentation of the problem with the water, thus discrediting their claim that the premises were unfit and uninhabitable.
The defendants have not established a cause of action for intentional infliction of emotional distress. To do so, "[I]t must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) Parsons v. UnitedTechnologies Corp., 243 Conn. 66, 101, 700 A.2d 655 (1997). In the present case, the defendants have not provided credible evidence to sustain a finding that any of the four requirements set forth in Parsons have been met. Likewise, with regard to the defendants' claim of negligent infliction of emotional distress, they have failed to show "that the [plaintiff] should have realized that its conduct involved an unreasonable risk of causing emotional distress and that the distress, if it were caused, might result in illness or bodily harm." See id., 88.
The defendants have not established a claim under CUTPA. In determining whether a practice violates CUTPA, we use the following criteria: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]." CT Page 1692Hartford Electric Supply Co. v. Allen-Bradley Co., 250 Conn. 334,368, ___ A.2d ___ (1999). Though the transactions that are the subject of the present case fall within the scope of CUTPA, the findings in favor of the plaintiff as to the validity and enforceability of the lease are dispositive of the defendants' CUTPA claim.
The plaintiff's action for unpaid rent damages is proper. "If a landlord terminates a residential or commercial tenancy on the grounds that the tenant committed a breach of the rental agreement and the landlord brings an action for damages for the breach, such damages shall include the amount of rent agreed to by the parties but unpaid by the tenant. The landlord shall be obligated to mitigate damages. This section shall not limit either party's rights to assert other legal or equitable claims, counterclaims, defenses or setoffs." General Statutes §47a-11c. In the present case, the plaintiff attempted to mitigate damages and the defendant failed to show that the efforts were unreasonable. Therefore, the plaintiff is entitled to the $7,200.00 difference between the rent agreed upon by the parties and that which was actually received.
The plaintiff may apply the defendant's security deposit to lost rent damages. General Statutes § 47a-21 (d)(1)(A) states that: "[a landlord] shall pay to the tenant or former tenant: (A) The amount of any security deposit that was deposited by the tenant with the person who was landlord at the time such security deposit was deposited less the value of any damages which any person who was a landlord of such premises at any time during the tenancy of such tenant has suffered as a result of such tenant's failure to comply with such tenant's obligations[.]" Here, the defendants' security deposit and interest in the amount of $1846.00 may be applied to the lost rent damages sustained by the plaintiff in the amount of $7200.00.
The plaintiff is entitled to attorney's fees of up to fifteen per cent of the judgment amount plus costs and interest pursuant to paragraph 13 of the lease. Attorney's fees and costs may be awarded where a specific contractual term provides for their payment. 24 Leggett Street Limited Partnership v. BeaconIndustries, 239 Conn. 284, 311, 685 A.2d 305 (1996). However, "[a] rental agreement shall not provide that the tenant [. . .] agrees to pay the landlord's attorney's fees in excess of fifteen per cent of any judgment against the tenant in any action in CT Page 1693 which money damages are awarded[.]" General Statutes § 47a-4
(a)(7). No evidence was presented as to attorney's fees in this case, but "[c]ourts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees." Andrews v. Gorby,237 Conn. 12, 24, 675 A.2d 449 (1996). Documentation of costs and interest was satisfactorily presented in the plaintiff's brief.
The plaintiff is entitled to utility and oil expenses incurred due to the defendants' breach of the lease. Evidence regarding those expenses was admitted at trial.
Judgment shall enter for the plaintiff on his complaint as follows:
Unpaid rent $7,200.00
Attorney's fees $ 847.00
Costs $ 173.16
Interest $ 758.85
Utility and Oil Expenses $ 254.91
SUBTOTAL $9,233.92
Less retained security deposit $1,800.00
TOTAL $7,433.92
By The Court Gill, J.