[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTIONS FOR SUMMARY JUDGMENT
Presently before the court are three motions for summary judgment. The plaintiff, Gerald Simpson, and the defendant, National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union), have filed cross motions for summary judgment in Simpson v. National UnionFire Ins. Co. of Pittsburgh, PA, Superior Court, judicial district of Hartford at Hartford, Docket No. 579769 (National Union case). Also before the court is a motion for summary judgment filed by the defendant, Allstate Insurance Company (Allstate), in the companion case of Simpson v. Allstate Ins. Co., Superior Court, judicial district of Hartford at Hartford, Docket No. 578278 (Allstate case).[1] In both actions, Simpson seeks to recover underinsured motorist coverage for injuries he sustained in a one vehicle accident.
The following facts are undisputed. At approximately 6:30 p.m. on May 15, 1995, Simpson was operating a tractor trailer truck on Interstate 91 North in Enfield, Connecticut, when a vehicle operated by Kyle Ravlin, without warning, moved into the right lane immediately in front of Simpson's vehicle. Ravlin's sudden change of lanes caused Simpson to slam on his brakes, whereupon the trailer unit of Simpson's vehicle jack-knifed while the cab unit collided into a jersey barrier. Simpson suffered serious injuries as a result.
The vehicle operated by Simpson was owned by his employer, TNT Red Star Express (Red Star). Janet Scavetta owned and maintained liability insurance on the vehicle Ravlin was operating at the time of the accident.[2] Scavetta's policy had a liability limit of $20,000, which was exhausted when her insurer, Allstate, settled all of Simpson's claims under the policy.[3] Simpson alleges in the present actions, however, that his claims against Ravlin and Scavetta are in excess of $20,000.
In the Allstate case, Simpson seeks to recover pursuant to an automobile policy that Allstate issued to him on his personal vehicle. The complaint in that case alleges that Allstate agreed under the policy to pay to Simpson "all sums which he shall be legally entitled to recover as damages from the owner or operator of an underinsured vehicle because of bodily injury sustained by an accident arising out of the use and operation of an underinsured vehicle." (Complaint, ¶ 4.) Simpson further alleges that as a result of the insurer's payment on behalf of CT Page 10956 Ravlin and Scavetta, Allstate is legally responsible for his remaining damages pursuant to General Statutes § 38a-336.[4]
In the National Union case, Simpson seeks to recover underinsured motorist coverage on a policy that National Union issued to the parent company of Red Star. The policy provides liability coverage on the tractor trailer truck that Simpson was operating at the time of the accident. That complaint alleges that National Union agreed under the policy to pay to an insured "all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an underinsured vehicle because of bodily injury sustained by an accident arising out of the use and operation of an underinsured vehicle." (Complaint, ¶ 4.) Simpson further alleges that as a result of his settlement with Scavetta's insurer, National Union is legally responsible for his remaining damages pursuant to General Statutes § 38a-336.
Allstate now moves for summary judgment in the Allstate case on the ground that the National Union policy is the primary policy and that the $2,000,000 of liability coverage under that policy precludes exposure of the $100,000 of coverage under the policy held by Simpson. National Union seeks summary judgment in the National Union case on the ground that the policy's underinsured motorist coverage is limited to $20,000 and, therefore, Simpson may not recover under the National Union policy. Simpson argues in response to National Union's motion and, in support of his cross motion for summary judgment, that the amount of underinsured motorist coverage under the National Union policy equals that of its liability coverage, to wit, $2,000,000. The parties' arguments are discussed more fully below.
 I
"The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried."Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989). "The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49.
In separate memoranda of law, Allstate and Simpson each argue that Connecticut law governs the National Union policy and that pursuant to General Statutes § 38a-336 (d),[5] the National Union policy is primary. They further argue that the endorsement to the policy, under which the parent company of Red Star purportedly elected the statutory minimum of underinsured motorist coverage for Connecticut, does not comply with Connecticut law and, therefore, underinsured motorist CT Page 10957 coverage under the policy equals the policy's liability limit of $2,000,000. Allstate and Simpson conclude that the available coverage under the National Union policy precludes Simpson from accessing the $100,000 of coverage provided by the Allstate policy.
National Union argues that Illinois law governs the National Union policy. National Union further claims that the parent company of Red Star selected the statutory minimum of underinsured motorist coverage for Connecticut in the amount of $20,000. National Union concludes that Ravlin's vehicle was not underinsured pursuant to the terms of the National Union policy and, therefore, Simpson may not access the policy's $20,000 in underinsured motorist coverage.
 II
The first issue is whether Connecticut or Illinois law governs the National Union policy. National Union argues that "[b]ecause the policy in question was issued in Illinois, it is Illinois law which controls; not Connecticut. . . ." (National Union's Memorandum of Law, dated November 9, 1999, p. 5.) Allstate and Simpson counter that Connecticut has abandoned the lex loci contractus approach to choice of law questions in favor of the more flexible "most significant relationship" test. Allstate further asserts that Connecticut law presumes "unless another state has an overriding policy-based interest in the application of its law, the law of the state in which the insured risk is located should be applied." (Allstate's Memorandum of Law, dated January 31, 2000, p. 6, citing Reichhold Chemicals, Inc. v. Hartford Accident Indemnity Co.,243 Conn. 401, 414, 703 A.2d 1132 (1997)). See also Reichhold Chemicals,Inc. v. Hartford Accident Indemnity Co., 252 Conn. 774, 778 and 782,750 A.2d 1051 (2000).
Notwithstanding National Union's lex loci argument, Connecticut presumes that in the absence of an overriding substantial interest of another state, the terms of a liability insurance contract shall be construed in accordance with the laws of the state in which the insured risk is primarily located. See Reichhold Chemicals, Inc. v. HartfordAccident Indemnity Co., supra, 252 Conn. 781-83. "With respect to liability insurance contracts, the starting point is § 193 of the Restatement (Second) [Conflict of Laws],[6] which creates a rebuttable presumption in favor of the state where the insured risk is located. In order to overcome this presumption, another state's interest must outweigh those of the state where the insured risk is located and must be sufficiently compelling to trump the § 193 presumption. Section 6(2) of the Restatement (Second),[7] supra, provides the criteria by which that overriding interest should be evaluated. It must be remembered that even if another state has a substantial interest under § 6(2), that CT Page 10958 interest will not defeat the § 193 presumption unless it is sufficiently compelling." Reichhold Chemicals, Inc. v. Hartford Accident Indemnity Co., supra, 782.
Although the National Union policy is a multi-state fleet insurance policy; see 1 Restatement (Second), Conflict of Laws, Contracts of Fire, Surety or Casualty Insurance § 193, comment (f), pp. 613-14 (1971); the evidence clearly indicates that Connecticut is the location of the insured risk with respect to the vehicle operated by Simpson.[8]
According to Simpson's uncontradicted affidavit, dated January 5, 2000, Red Star owned the 1981 Ford Tractor he was operating at the time of the accident. (See Simpson Affidavit, ¶ 3.) The vehicle was garaged at 540 Sullivan Avenue in South Windsor, Connecticut[9] and registered in Connecticut. (Id., ¶¶ 4, 5.) Additionally, the accident and injury to Simpson occurred in Connecticut, and both Simpson and Ravlin possess Connecticut driver's licenses. (See Accident Report, dated May 18, 1995.) For these reasons, the court concludes that Connecticut is the location of the insured risk with respect to the tractor trailer truck operated by Simpson at the time of the accident.
The court further concludes that Illinois does not have a sufficiently compelling, substantial interest which would override the presumption that, with respect to the insured risk at issue, Connecticut law governs the National Union policy. As previously noted, the vehicle driven by Simpson was registered and garaged in Connecticut and the events giving rise to Simpson's claim for underinsured motorist coverage all occurred in Connecticut. The endorsement, regardless of whether it complies with Connecticut law, undisputedly shows an intent to elect the statutory minimum and thus demonstrates that National Union and Red Star's parent company contemplated Connecticut law would govern the amount of underinsured motorist coverage for those vehicles registered and garaged in Connecticut. (See Endorsement No. 8; see also Clarke Affidavit, ¶¶ 9, 10 and 12.) Lastly, Illinois' uninsured coverage statutes apply only to those vehicles either registered or principally garaged in the state. See 625 Il. Comp. Stat. 7/601(a) ("no insurer other than an insurer authorized to do business in this state shall issue a policy pursuant to this Section for any vehicle subject to registration under this code") and 215 Il. Comp. Stat. 5/143a (requires coverage for bodily injuries sustained by an uninsured operator of vehicle that is "either required to be registered in this State or is principally garaged in this State"). The court concludes, therefore, that the terms of the National Union policy shall be construed in accordance with Connecticut law.
 III
The next issue is whether the endorsement to the National Union policy CT Page 10959 complies with General Statutes § 38a-336 (a)(2). General Statutes § 38a-336 (a)(2) provides in relevant part that "[n]o such written request for a lesser amount shall be effective unless any named insured has signed an informed consent form which shall contain: (A) An explanation of uninsured and underinsured motorist insurance approved by the commissioner; (B) a list of uninsured and underinsured motorist coverage options available from the insurer; and (C) the premium cost for each of the coverage options available from the insurer. Such informed consent form shall contain a heading in twelve-point and shall state: "WHEN YOU SIGN THIS FORM, YOU ARE CHOOSING A REDUCED PREMIUM, BUT YOU ARE ALSO CHOOSING NOT TO PURCHASE CERTAIN VALUABLE COVERAGE WHICH PROTECTS YOU AND YOUR FAMILY. IF YOU ARE UNCERTAIN ABOUT HOW THIS DECISION WILL AFFECT YOU, YOU SHOULD GET ADVICE FROM YOUR INSURANCE AGENT OR ANOTHER QUALIFIED ADVISOR."
Allstate and Simpson each contend that the endorsement does not comply with the statute in that the endorsement does not include the required informed consent language or the signature of a representative of Red Star. National Union argues that the endorsement complies with the spirit, if not the letter, of the statute because the parent company of Red Star elected in writing the statutory minimum of underinsured motorist coverage for Connecticut.
Section 38a-336 (a)(2), as construed by our Supreme Court, does not require each insured under a fleet liability insurance policy to sign the written request for the statutory minimum of uninsured and underinsured motorist coverage. See Frantz v. United States Fleet Leasing, Inc.,245 Conn. 727, 739, 714 A.2d 1222 (1998); see also General Statutes § 38a-336 (a)(2) ("no such written request for a lesser amount shall be effective unless any named insured has signed a consent form"). As the court discussed in Frantz v. United States Fleet Leasing, Inc., supra, 739, requiring a written request from each insured under a fleet policy "would [not] further the legislative goal of ensuring that consumers are informed of the relative cost of this type of insurance. Although a corporation . . . may be considered a "consumer' of insurance in the broadest sense of that word, we do not believe that a company that . . . is covered under a commercial fleet policy, falls within the class of consumers that the legislature sought to protect in requiring the signature of all named insureds under § 38a-336 (a)(2)." Red Star's parent company, like many large corporations covered under commercial fleet policies, hires individuals who specialize in legal and insurance matters. (See Clarke Affidavit, dated April 11, 2000, ¶¶ 2 and 11.) It is highly likely, therefore, that Red Star and its parent company were fully aware of the relative cost of underinsured motorist coverage and the implications of selecting the statutory minimum of such coverage. The court must conclude, therefore, that in the context of a fleet policy, CT Page 10960 strict adherence to the written consent rule under § 38a-336 (a)(2) "is both unreasonable and impracticable." Frantz v. United States FleetLeasing, Inc., supra, 740.
Lastly, the court "cannot ignore the fact that commercial fleet insurance gives rise to a significantly different set of expectations and considerations than does personal automobile insurance." Frantz v. UnitedStates Fleet Leasing, Inc., supra, 245 Conn. 741-42. It can be presumed that a company's chief interest in obtaining the statutory minimum in coverage is to protect itself and its allied companies from exposure to liability. See id., 740. Requiring an informed consent form in the context of a commercial fleet policy to include the specific language of § 38a-336 "would [not] further the legislative goal of ensuring that consumers are informed of the relative cost of this type of insurance."Frantz v. United States Fleet Leasing, Inc., supra, 739. As previously discussed, large corporations, such as Red Star's parent company, typically employ specialists to manage risk and negotiate insurance contracts and, therefore, are presumed to be aware of the relative costs and benefits of such coverage. (See Clarke Affidavit, dated April 11, 2000, ¶¶ 2, 6-12.) In fact, the uncontradicted evidence in this case demonstrates that Red Star's parent company made an informed decision to accept only the statutory minimum in underinsured motorist coverage for Connecticut. According to the affidavit of Thomas W. Clarke, vice president of risk management for USFreightways Corporation, Red Star's parent company, [USFreightways] employs insurance specialists, including myself, who were involved in obtaining the policy; those persons are and were fully aware of UM/UIM insurance coverage, its availability, its cost and its benefits." (See Clarke Affidavit, dated April 11, 2000, ¶ 11.) Clarke further attests that [USFreightways] made a conscious business decision to obtain UM/UIM coverage only in the minimum amount required by the various states." (See Clarke Affidavit, dated April 11, 2000, ¶ 12.) The court concludes that the endorsement to the National Union policy, intending to elect the statutory minimum in underinsured motorist coverage for Connecticut in the amount of $20,000, is effective.
In view of this determination, Simpson is not entitled to underinsured motorist benefits under the National Union policy because Scavetta's vehicle is not an underinsured motor vehicle under the terms of the National Union policy. See Frantz v. United States Fleet Leasing, Inc.,
supra, 245 Conn. 742.
Accordingly, National Union's motion for summary judgment is hereby granted. Simpson's motion for summary judgment is denied. Allstate's motion for summary judgment is denied. CT Page 10961
Peck, J.