# WILLIAM BOYNTON, JR. *v.* CITY OF NEW HAVEN
## (AC 20388)

Landau, Dranginis and Peters, Js.

Argued March 23—officially released June 19, 2001

*Shari A. Murphy*, with whom, on the brief, was *Benjamin Boutaugh*, legal intern, for the appellant (plaintiff).

*Thomas W. Ude, Jr.*, deputy corporation counsel, for the appellee (defendant).

*Opinion*

PETERS, J. General Statutes (Rev. to 1993) § 38a-371 (c)[1] requires Connecticut municipalities to provide underinsured[2] motorist benefits for municipal employees who, in the course of the performance of their duties, sustain injuries while driving a municipal passenger vehicle. General Statutes (Rev. to 1993) § 14-129[3] and § 38a-371 (c)[4] permit a municipality, after notifying the insurance commissioner, to fund such benefits by becoming a self-insurer. The dispositive question in this case is

---

[1] General Statutes (Rev. to 1993) § 38a-371 (c) provides: "Subject to approval of the insurance commissioner the security required by sections 38a-363 to 38a-388, inclusive, may be provided by self-insurance by filing with the commissioner in satisfactory form: (1) A continuing undertaking by the owner or other appropriate person to pay basic reparations benefits and the liabilities covered by residual liability insurance and to perform all other obligations imposed by said sections; (2) evidence that appropriate provision exists for the prompt and efficient administration of all claims, benefits, and obligations provided by said sections; and (3) evidence that reliable financial arrangements, deposits or commitments exist providing assurance for payment of basic reparations benefits and the liabilities covered by residual liability insurance and all other obligations imposed by said sections substantially equivalent to those afforded by a policy of insurance that would comply with said sections. A person who provides security under this subsection is a self-insurer. A municipality may provide the security required under said sections by filing with the commissioner a notice that it is a self-insurer."

[2] We refer to "underinsured" motorist coverage without intending a distinction between such coverage and "uninsured" motorist coverage.

[3] General Statutes (Rev. to 1993) § 14-129 provides: "(a) Any person in whose name more than twenty-five motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the commissioner as provided in subsection (b) of this section.

"(b) The commissioner may, in his discretion, upon the application of such person, issue a certificate of self-insurance when he is satisfied that such person is possessed and will continue to be possessed of ability to pay judgments obtained against such person.

"(c) Upon not less than five days' notice and a hearing pursuant to such notice, the commissioner may, upon reasonable grounds, cancel a certificate of self-insurance. Failure to pay any judgment within thirty days after such judgment has become final shall constitute a reasonable ground for the cancellation of a certificate of self-insurance."

[4] See footnote 1.

whether, for an accident that occurred in 1993, our statutes required a self-insured municipality to provide limitless underinsured motorist coverage. The municipality and the employee disagree about whether the municipality's exposure exceeds the statutorily defined minimum of $20,000 per person and $40,000 per occurrence. General Statutes (Rev. to 1993) §§ 38a-371 (a) (1)[5] and 14-112.[6] Like the trial court, we are persuaded that, in 1993, a self-insured municipality was not obligated to provide more coverage than the statutory minimum.

The plaintiff, William Boynton, Jr., brought two actions to recover underinsured motorist benefits, which were consolidated for trial pursuant to Practice Book § 9-5.[7] In one action, he sought to recover underin-

---

[5] General Statutes (Rev. to 1993) § 38a-371 (a) (1) provides in relevant part: "The owner of a private passenger motor vehicle required to be registered in this state shall provide and continuously maintain throughout the registration period security in accordance with sections 38a-363 to 38a-388, inclusive . . . ."

[6] General Statutes (Rev. to 1993) § 14-112 (a) provides in relevant part: "When commissioner shall require. Exception. To entitle any person to receive or retain a motor vehicle operator's license or a certificate of registration of any motor vehicle when, in the opinion of the commissioner, such person has violated any of the provisions of section 14-222, section 14-224 or subsection (a) of section 14-227a or any similar provision of the laws of any other state or any territory, or who has been convicted of, or has forfeited any bond taken for appearance for, or has received a suspended judgment or sentence for, a violation of any of said provisions, or who has been held or found criminally responsible in connection with any motor vehicle accident resulting in the death of any person, or who has a record on file with the commissioner which is sufficient, in the opinion of the commissioner, to require evidence of financial responsibility for the reasonable protection of other persons, the commissioner shall require from such person proof of financial responsibility to satisfy any claim for damages by reason of personal injury to, or the death of, any one person, of twenty thousand dollars, or by reason of personal injury to, or the death of, more than one person on account of any accident, of at least forty thousand dollars, and for damage to property of at least ten thousand dollars, except that, for violations of section 14-222 or section 14-224 if there is no personal injury and the property damage is under one thousand dollars, the commissioner may, in his discretion, waive such requirements. . . ."

[7] Practice Book § 9-5 provides: "(a) Whenever there are two or more separate actions which should be tried together, the judicial authority may,

sured motorist benefits allegedly included in an insurance policy issued to him by Nationwide Mutual Insurance Company. That action is not part of this appeal.[8] In the other action, because he is a city employee, he sought similar benefits from the defendant city of New Haven (city).

In the plaintiff's complaint against the city, he alleged that, on December 9, 1993, while driving a police motorcycle in New Haven in the course of his duty, he was involved in a collision resulting from the negligence of Shawn Lavoie. He further alleged that he had suffered severe personal injuries from the collision, for which he had recovered, in part, by his receipt of the maximum $25,000 available to him from Lavoie's liability insurer.[9] According to the complaint, the city's duty to provide underinsured motorist benefits required it to cover the unpaid portion of the damages arising out of the collision.

upon the motion of any party or upon its own motion, order that the actions be consolidated for trial.

"(b) If a party seeks consolidation, the motion to consolidate shall be filed in all of the court files proposed to be consolidated, shall include the docket number and judicial district of each of the cases, and shall contain a certification specifically stating that the motion was served in accordance with Sections 10-12 through 10-17 on all parties to such actions. The certification shall specifically recite the name and address of each counsel and pro se party served, the date of such service and the name and docket number of the case in which that person has appeared. The moving party shall give reasonable notice to all such parties of the date on which the motion will be heard on short calendar. The judicial authority shall not consider the motion unless it is satisfied that such notice was given.

"(c) The court files in any actions consolidated pursuant to this section shall be maintained as separate files and all documents submitted by counsel or the parties shall bear only the docket number and case title of the file in which it is to be filed."

[8] The plaintiff's claim against Nationwide Mutual Insurance Company, his own insurer, is based on underinsured motorist coverage contained in an insurance policy covering his own vehicle. The court denied a motion for summary judgment filed by Nationwide Mutual Insurance Company.

[9] The plaintiff is also receiving workers' compensation payments.

The city filed a motion for summary judgment pursuant to Practice Book § 17-49.[10] The court granted that motion on the ground that Lavoie's vehicle was not underinsured with respect to the city's liability as self-insurer.[11] That conclusion was based on the court's acceptance of the city's position that its potential liability was limited to the statutory minimum of $20,000, which had been exceeded by the plaintiff's receipt of $25,000 from Lavoie's insurer. This appeal followed.

"The standard of review of a trial court's decision to grant summary judgment is well established. [W]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Connecticut National Bank* v. *Rytman*, 241 Conn. 24, 37, 694 A.2d 1246 (1997); *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 292, 596 A.2d 414 (1991); *Zichichi* v. *Middlesex Memorial Hospital*, 204 Conn. 399, 402, 528 A.2d 805 (1987). Because neither party has claimed that this case concerns disputed material facts, we are concerned only with the city's right to judgment as a matter of law. The only questions of law in this case are questions of statutory construction. Accordingly, our review is plenary. *Coley* v. *Camden Associates, Inc.*, 243 Conn. 311, 318, 702 A.2d 1180 (1997).

The undisputed facts establish that, at all relevant times, the city had opted to provide the insurance coverage mandated by our statutes through self-insurance and had properly so notified the insurance commissioner in 1965. Unlike private owners of a fleet of motor

---

[10] Practice Book § 17-49 provides: "The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

[11] A second defense based on General Statutes § 52-557n (b) (6) was rejected by the court. The city has not pursued that on appeal.

vehicles, the city was not required to provide evidence of financial responsibility. General Statutes (Rev. to 1993) § 38a-371 (c). Not until June 8, 1998, years after the plaintiff's injury, did the city notify the insurance commissioner that its self-insured liability for uninsured and underinsured motorist coverage was limited to the statutory minimum of $20,000 per person and $40,000 per occurrence. Indeed, at the time of the accident, the city's self-insurance plan had not been memorialized in a written document of any kind. See *Willoughby* v. *New Haven,* 254 Conn. 404, 409, 757 A.2d 1083 (2000) (another underinsured motorist insurance claim against city of New Haven). The court concluded that the city had no liability to the plaintiff because he had recovered more than the statutory minimum defined in § 14-112. Although General Statutes § 38a-336 (a) (2)[12] now

---

[12] General Statutes § 38a-336 provides in relevant part: "(a) (1) Each automobile liability insurance policy shall provide insurance, herein called uninsured and underinsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom. Each insurer licensed to write automobile liability insurance in this state shall provide uninsured and underinsured motorists coverage with limits requested by any named insured upon payment of the appropriate premium, provided each such insurer shall offer such coverage with limits that are twice the limits of the bodily injury coverage of the policy issued to the named insured. The insured's selection of uninsured and underinsured motorist coverage shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by any named insured. No insurer shall be required to provide uninsured and underinsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) any insured occupying an uninsured or underinsured motor vehicle or motorcycle that is owned by such insured.

"(2) Notwithstanding any provision of this section to the contrary, each automobile liability insurance policy issued or renewed on and after January

includes a special procedure for waiving underinsured motorist coverage in excess of the statutory minimum, the court held that that provision was inapplicable because it did not become effective until 1994, while the plaintiff's accident occurred in 1993.[13]

I

Before turning to the specific issues of statutory interpretation that we must address, we review the applicable underlying principles. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment,

---

1, 1994, shall provide uninsured and underinsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless any named insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by any named insured. No such written request for a lesser amount shall be effective unless any named insured has signed an informed consent form which shall contain: (A) An explanation of uninsured and underinsured motorist insurance approved by the commissioner; (B) a list of uninsured and underinsured motorist coverage options available from the insurer; and (C) the premium cost for each of the coverage options available from the insurer. Such informed consent form shall contain a heading in twelve-point type and shall state: 'WHEN YOU SIGN THIS FORM, YOU ARE CHOOSING A REDUCED PREMIUM, BUT YOU ARE ALSO CHOOSING NOT TO PURCHASE CERTAIN VALUABLE COVERAGE WHICH PROTECTS YOU AND YOUR FAMILY. IF YOU ARE UNCERTAIN ABOUT HOW THIS DECISION WILL AFFECT YOU, YOU SHOULD GET ADVICE FROM YOUR INSURANCE AGENT OR ANOTHER QUALIFIED ADVISER.' . . ."

[13] In light of the inapplicability of this version of § 38a-336 to this case, we do not consider how the statute operates when a municipality decides to act as self-insurer.

to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) *Willoughby* v. *New Haven,* supra, 254 Conn. 410. The parties in this case have cited no legislative history. Common-law principles do not inform the scope of the requirement of underinsured motorist coverage because such insurance is entirely a creature of statute presenting only issues of statutory interpretation. See id. Our focus, therefore, is on the words of the statutes and the policies they embody.

To state the obvious, no statute expressly directs a self-insurer to pay underinsured motorist benefits in excess of the minimum amount prescribed in § 14-112. On the other hand, no statute expressly permits the city, without notice or documentation, to limit its exposure to the statutory minimum. The parties are not tilting at windmills.

## II

Our task is to glean what we can from three relevant statutory propositions. These propositions govern (1) the undisputed fiscal responsibility of the city as self-insurer, (2) the undisputed obligation of the city to provide underinsured motorist coverage, and (3) the disputed relationship between the city's liability coverage and its underinsured motorist coverage.

## A

We address the first proposition in two parts. First and foremost, §§ 14-129 and 38a-371 (c) authorize the city to become self-insured. Second, those authorizing statutes do not impose greater liability on a self-insurer than they impose on a commercial insurer. *Willoughby* v. *New Haven,* supra, 254 Conn. 437. As our Supreme Court has stated recently, the funding mechanism by which an owner of multiple vehicles decides to meet

its fiscal obligations "is irrelevant to the obligation of that funding entity to comply with such requirements . . . . [S]elf-insurance is the functional equivalent of commercial insurance. *Hertz Corp.* v. *Federal Ins. Co.*, 245 Conn. 374, 378 n.4, 713 A.2d 820 (1998); see also *Conzo* v. *Aetna Ins. Co.*, 243 Conn. 677, 686, 705 A.2d 1020 (1998) ([t]he legislature intended to create a uniform scheme of uninsured motorist insurance coverage applicable to self-insurers as well as commercial insurance carriers)." (Internal quotation marks omitted.) *Willoughby* v. *New Haven*, supra, 437. The fiscal responsibility, therefore, is the same for a self-insurer as it is for a commercial insurer.

B

With regard to the second proposition, the city is required to provide underinsured motorist coverage on certain municipal motor vehicles, pursuant to General Statutes (Rev. to 1993) § 38a-336 (a),[14] to protect city

[11] General Statutes (Rev. to 1993) § 38a-336 provides in relevant part: "(a) (1) Each automobile liability insurance policy shall provide insurance, herein called uninsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom. Each insurer licensed to write automobile liability insurance in this state shall provide uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but the insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of the policy issued to the named insured. No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) to any insured occupying an uninsured or underinsured motor vehicle or motorcycle that is owned by such insured.

"(2) Notwithstanding any provision of this section to the contrary, each automobile liability insurance policy issued or renewed on and after January 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting

employees from the costs of accidental injuries that occur while the employee drives a covered vehicle in the course of his employment. "Although § 38a-336 (a) (1) states generally that automobile liability insurance policies must provide uninsured and underinsured motorist coverage, it provides that such coverage is governed by the regulations adopted pursuant to section 38a-334 . . . ." (Internal quotation marks omitted.) *Willoughby* v. *New Haven*, supra, 254 Conn. 414. "Section 38a-334-6 (a) of the Regulations of Connecticut State Agencies provides that the uninsured motorist coverage that it requires 'shall insure the occupants of every motor vehicle to which the bodily injury liability coverage applies. . . .' It is therefore necessary to refer to § 38a-334-5 of the Regulations of Connecticut State Agencies, which covers liability coverage. Section 38a-334-5 (a) of the regulations provides that its liability coverage requirements apply to 'motor vehicle[s] owned or long-term leased by the named insured. . . .' The term '[m]otor [v]ehicle,' as used in the regulations, is defined as: 'private passenger motor vehicle . . . commercial motor vehicle . . . motorcycle . . . public service motor vehicles . . . motor vehicle in livery service . . . and vanpool vehicle . . . .' Regs., Conn. State Agencies § 38a-334-2 (c)." *Willoughby* v. *New Haven*, supra, 415–19.[15] Because a motorcycle is a covered vehicle, the plaintiff has a rightful claim for underinsured motorist coverage pursuant to § 38a-336 (a).

## C

The relationship between the city's liability coverage and its underinsured motorist coverage is indirectly

---

from the liability imposed by law unless the insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by the insured. . . ."

[15] In *Willoughby*, the vehicle in question was not in the specified class of vehicles enumerated in § 38a-334.

addressed in General Statutes (Rev. to 1993) §§ 38a-335 (a)[16] and 38a-336 (a) (2). The city, relying on the former, and the plaintiff, relying on the latter, look to these sections for answers to the thorny and disputed question of *how much* underinsured motorist coverage the city must provide. Section 38a-335 (a) permits the statutorily enumerated class of motor vehicle owners to limit their mandatory insurance coverage to the minimum of $20,000 per person and $40,000 per accident. See footnote 14. General Statutes (Rev. to 1993) § 38a-336 (a) (2) provided for parity between "uninsured" motorist coverage[17] and liability coverage "imposed by law."[18] We turn now to a discussion of this contradiction.

In its memorandum of decision, the court concluded that the city was entitled to limit its underinsured motorist coverage in accordance with § 38a-336 (a). It relied on the absence of any statutory provision that "requires a self-insured entity to exceed the minimum coverage required by statute." In support of its reasoning, it cited *Orkney* v. *Hanover Ins. Co.*, 248 Conn. 195, 205, 727 A.2d 700 (1999). In a related context,[19] that case stated that the underinsured motorist statute "merely requires

[16] General Statutes (Rev. to 1993) § 38a-335 (a) provides: "Each automobile liability insurance policy shall provide insurance in accordance with the regulations adopted pursuant to section 38a-334 against loss resulting from the liability imposed by law, with limits not less than those specified in subsection (a) of section 14-112, for damages because of bodily injury or death of any person and injury to or destruction of property arising out of the ownership, maintenance or use of a specific motor vehicle or motor vehicles within any state, territory, or possession of the United States of America or Canada."

[17] Our Supreme Court has held that coverage provided for injuries caused by vehicles that are "uninsured" automatically includes coverage for vehicles that are "underinsured." See *Hotkowski* v. *Aetna Life & Casualty Co.*, 224 Conn. 145, 151, 617 A.2d 451 (1992).

[18] See footnote 14.

[19] In *Orkney*, the issue was whether an employee could recover underinsured motorist benefits for injuries arising out of an accident caused by a self-insured motorist. The court held that there was no such coverage.

that a certain minimum level of protection be provided
. . . ." (Internal quotation marks omitted.) Id.

The plaintiff proffers two arguments to the contrary.
First, the plaintiff maintains that, under the principle
of parity between liability coverage and underinsured
motorist coverage, the city was required to provide
underinsured motorist coverage in the same amount as
its unlimited liability coverage. See General Statutes
§ 38a-336 (a) (2). Second, he maintains that the city
could not invoke the statutory minimum without having
executed some kind of written waiver or notice. We
are not persuaded.

1

The plaintiff's argument, which is based on the princi-
ple of parity under § 38a-336 (a) (2), is that, in 1993,
the city's exposure for liability coverage was unlimited.
He relies on the text of the self-insurer statute, which
does not specify the amount of the city's exposure in
its posture as self-insurer. General Statutes § 14-129.
Because the city's notification to the insurance commis-
sioner did not specify the amount of the city's exposure
as self-insurer, he maintains that the city must be
deemed to have agreed to assume unlimited liability
coverage.[20] Ergo, the city was required to provide unlim-
ited underinsured motorist coverage. We disagree.

The flaw in the plaintiff's argument is its assumption
of a linkage between §§ 14-129 and 38a-336. As our
Supreme Court recently observed, "§ 14-129 was part
of the legislative effort to impose minimum liability
coverage. Nothing in its history suggests that it was

---

[20] The plaintiff cites *Travelers Indemnity Co.* v. *Malec,* 215 Conn. 399,
402, 576 A.2d 485 (1990), but that case is not helpful because it arose in
the context of an arbitration award. In light of the limited scope of judicial
review of arbitration awards; *American Universal Ins. Co.* v. *DelGreco,* 205
Conn. 178, 185, 530 A.2d 171 (1987); the court's analysis of the legislative
history is dictum.

ever intended to trump the subsequently enacted, and more specific, provision regarding uninsured and underinsured motorist coverage." *Willoughby* v. *New Haven*, supra, 254 Conn. 434. Under *Willoughby*, although specific statutes after § 14-129 could place an additional insurance burden on the city, § 14-129 does not, and cannot, define the amount of coverage that the city agreed to provide when it became a self-insurer.

In the absence of linkage to § 14-129, the plaintiff is left with the text of § 38a-336. It is true that subsection (a) (2) requires parity between liability and underinsured motorist coverage. It is equally true that the subsection does not mandate the amount of coverage to be provided. That gap is filled by the statutory minimum specified in § 14-112, which defines the limit of the city's fiscal obligation. The applicability of the statutory minimum is reasonable because the exposure of commercial insurers is not unlimited. As noted earlier, self-insurers are entitled to the same protection as is afforded to commercial insurers.

Our conclusion finds support in numerous out-of-state authorities cited by the city. 1 L. Russ & T. Segalla, Couch on Insurance (3d Ed. 1997) § 10:3, p. 10-9, states that "it is generally held that the self-insured must provide the minimum amount of coverage that is allowed by the [underinsured motorist] statute." See generally *Hartford Ins. Co.* v. *Hertz Corp.*, 410 Mass. 279, 287 n.10, 572 N.E.2d 1 (1991); *Heavens* v. *Laclede Gas Co.*, 809 S.W.2d 162, 163 (Mo. App. 1991).

The argument based on parity, therefore, does not establish that the city was required to provide underinsured motorist coverage in an amount greater than the statutory minimum of $20,000. Once it is determined that the statutory minimum is applicable, the plaintiff's receipt of $25,000 from Lavoie's insurance carrier fore-

closes his access to further reimbursement from the city.

2

In the alternative, the plaintiff argues that the city could not avail itself of the statutory minimum because it had failed properly to document, in writing, its intention to do so. In 1993, § 38a-336 (a) (2) allowed commercial insurers to limit their liability, and thereby to reduce insurance premiums, upon the *written request* of the insured. It is undisputed that, in 1993, the city had not filed any such written request.

We disagree with the plaintiff's argument because, under the circumstances of this case, it would make no sense for us to apply the written request requirement literally. "[U]pon electing to become a self-insurer, [the city] not only became an insurer . . . but also, the functional equivalent of a 'named insured' . . . ." (Citation omitted.) *Conzo* v. *Aetna Ins. Co.*, supra, 243 Conn. 683. A literal reading of the statute would have required the city, wearing its hat as insured, to file a written request with itself, wearing its hat as insurer. That reading is untenable.

As the city notes, its self-insurer status with respect to its fleet of passenger motor vehicles bears a closer resemblance to fleet insurance generally. "[F]leet insurance gives rise to a significantly different set of expectations and considerations than does personal automobile insurance." *Frantz* v. *United States Fleet Leasing, Inc.*, 245 Conn. 727, 741–42, 714 A.2d 1222 (1998).

"[T]he primary legislative purpose in requiring a written request for a reduction in uninsured motorist coverage is to ensure that one named insured not be bound, to his or her detriment, by the unilateral decision of another named insured to seek such a reduction. . . . Such a concern has little or no applicability in the con-

text of a commercial fleet policy." (Citation omitted.) Id., 739.

In light of this legislative purpose, we are persuaded that it would be an exercise in futility to require the city to file a written request to itself. We presume that the legislature did not intend such an outcome. See, e.g., *Schreck* v. *Stamford*, 250 Conn. 592, 597, 737 A.2d 916 (1999). The plaintiff's reliance on the written waiver requirement stated in § 38a-336 (a) (2) is, therefore, unfounded.

In summary, the plaintiff is entitled only to the statutory minimum amount of underinsured motorist coverage because the applicable statutes impose no greater obligation on the city.

In light of the city's simultaneous roles as self-insurer and self-insured, the plaintiff can recover only the statutory minimum despite the fact that the city never submitted a written request for such coverage to itself.

The judgment is affirmed.

In this opinion the other judges concurred.