JOHN SERRA *v.* CITY OF WEST HAVEN ET AL.
(AC 22992)

Flynn, Bishop and West, Js.

Argued February 10—officially released June 3, 2003

*Vincent R. Falcone*, for the appellant (plaintiff).

*Kenneth J. Mastroni*, for the appellee (named defendant).

*Opinion*

FLYNN, J. The plaintiff, John Serra, appeals from the summary judgment rendered by the trial court in favor of the defendant city of West Haven.[1] On appeal, the plaintiff claims that the court improperly held that West Haven was obligated to provide only the statutory minimum $20,000 in uninsured-underinsured motorists coverage[2] despite what he claims is evidence that West

---

[1] The defendant West Haven's insurance carrier, Coregis Insurance Company, also was named as a defendant in this action. This appeal, however, concerns only the summary judgment rendered in favor of West Haven.

[2] For convenience we will refer to underinsured motorist coverage as encompassing both uninsured and underinsured motorists See *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 21 n.4, 699 A.2d 964 (1997).

Haven had expressly agreed to provide $50,000 in such benefits. We affirm the judgment of the trial court because we conclude that West Haven, pursuant to our precedent in *Boynton* v. *New Haven,* 63 Conn. App. 815, 779 A.2d 186, cert. denied, 258 Conn. 905, 782 A.2d 136 (2001), was statutorily bound to provide only the $20,000 minimum underinsured motorists coverage and that such sum was obligated only if the tortfeasor lacked coverage for that minimum.[3]

The following facts are not in dispute. On April 2, 1999, the plaintiff, a West Haven police officer, was injured in an automobile accident when his police vehicle was struck by another automobile. The plaintiff's police vehicle was owned by West Haven and used as a police emergency vehicle. The accident was due to

[3] The public entity excess automobile liability declaration page of West Haven's policy with its insurance carrier, Coregis Insurance Company, indicates that West Haven has a self-insured retention of $50,000 per occurrence. The "Schedule of Coverages" section on this form indicates that West Haven is covered in the amount of $950,000 each for automobile liability and uninsured motorists and underinsured motorists protection.

The commercial automobile "Connecticut Uninsured and Underinsured Motorists Coverage" endorsement indicates that the endorsement is effective July 1, 1997, and sets forth a $950,000 limit of insurance for each accident. The policy indicates, below the statement, "If indicated by an 'X' in the box to the left or in the Declarations, Underinsured Motorists Conversion Coverage applies." However, no "X" has been placed in this box to indicate that this conversion coverage applies. Underinsured motorists conversion coverage is authorized under General Statutes § 38a-336a. "This option, which is available *for an additional premium* to consumers who wish to purchase it *in lieu of standard underinsured motorist coverage under § 38a-336,* provides enhanced protection to victims of underinsured motorists because, in contrast to coverage under § 38a-336, it is activated when the sum of all payments received by or on behalf of the covered person from or on behalf of the tortfeasor are less than the *fair, just and reasonable damages of the covered person.*" (Emphasis in original; internal quotation marks omitted.) *Florestal* v. *Government Employees Ins. Co.,* 236 Conn. 299, 307, 673 A.2d 474 (1996).

We conclude that the court properly determined that West Haven is a self-insured entity required to provide only $20,000 minimum coverage, and because the plaintiff already has recovered that amount, this recovery forecloses further recovery from West Haven.

the negligence of the other driver (tortfeasor) with whom the plaintiff settled his claim for $20,000, the full amount of insurance coverage available under the tortfeasor's liability insurance policy.

The plaintiff then filed a claim with West Haven, claiming that his damages were in excess of the $20,000 policy limit of the tortfeasor. He sought coverage from West Haven claiming that by virtue of its purchase of an excess liability policy with a self-insured retention of $50,000, West Haven, by opting for that self-insured retention, had an obligation to provide the plaintiff with $50,000 of underinsured motorists coverage. Additionally, the plaintiff sought excess coverage from West Haven's insurer, Coregis Insurance Company (Coregis), which provided the defendant an additional $950,000 in insurance coverage. After West Haven refused to settle the plaintiff's claim, the plaintiff commenced an action in the Superior Court.

West Haven moved for summary judgment on the basis of two alternate arguments. First, West Haven argued that summary judgment should be granted on the ground that it does not have an obligation to provide underinsured motorists benefits for an "authorized emergency vehicle."[4] This issue is not before us on appeal. Second, West Haven argued that summary judgment should be granted on the ground that the coverage available from the other driver's policy is equal to or

---

[4] In its memorandum of decision, the court concluded that although the Ford Crown Victoria police vehicle, which the plaintiff was driving at the time of the accident, was an "authorized emergency vehicle" pursuant to General Statutes § 14-1 (a) (4), it was also a private passenger motor vehicle as provided in General Statutes § 38a-363 (e), and West Haven, therefore, was obligated to provide at least the minimum underinsured motorists benefits on that vehicle. Whether underinsured motorists coverage must be provided for an "authorized emergency vehicle" is not at issue here because the court found against West Haven on that issue and West Haven did not file a cross appeal.

greater than the coverage that West Haven is statutorily required to provide.

The court held in relevant part, relying on *Boynton* v. *New Haven*, supra, 63 Conn. App. 815, that although West Haven was required to provide at least the minimum underinsured motorists benefits, the plaintiff, already having recovered that amount from the tortfeasor, was foreclosed from further recovery from West Haven. This appeal followed.

The standard employed in reviewing a trial court's decision to render summary judgment is well established. When material facts are not in dispute, we must determine whether the moving party was entitled to judgment as a matter of law. Id., 819. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) *Preston* v. *O'Rourke*, 74 Conn. App. 301, 306, 811 A.2d 753 (2002). Where, as here, neither party has claimed that this case concerns disputed material facts, we are concerned only with West Haven's right to judgment as a matter of law. The only questions of law in this case concern statutory construction. Accordingly our review is plenary. See *Boynton* v. *New Haven*, supra, 63 Conn. App. 819.

We first address the plaintiff's claim that the court improperly concluded, as a matter of law, that West Haven was obligated to provide no more than the statutory minimum benefits for underinsured motorist coverage. The plaintiff argues that, although West Haven may not have been *obligated* to provide more than the statutory minimum benefits, the "overwhelming evidence [demonstrated] that . . . [West Haven] provided [underinsured motorist] coverage in the amount of $50,000 on the date the [p]laintiff sustained his injuries"

in addition to maintaining an excess insurance policy in the amount of $950,000. Further, the plaintiff contends that the insurance policy between West Haven and Coregis "shows that the policy has a self-insured retention of $50,000, which applied to both the general liability limits and the uninsured motorist benefits provided by the policy. . . . [This policy] is clear evidence that [West Haven] intended to and did provide its employees with $50,000 in [underinsured motorist] benefits on the date of the accident." The plaintiff cites as further evidence that West Haven did provide more than the statutory minimum underinsured motorists benefits to its employees the fact that he is personally aware that benefit payments in excess of the statutory minimum were previously paid by West Haven on underinsured motorists claims involving police vehicles, and he was led to believe that he was entitled to receive these benefits.

West Haven counters that because it is a self-insured entity, it does not have to provide more than the statutory $20,000 minimum underinsured motorists coverage, and, accordingly, it was entitled to judgment as a matter of law. We agree that the policy references to the $50,000 self-insured retention did not create a legal liability in excess of the statutory minimum of $20,000 for underinsured motorists coverage.

As we held in *Boynton* v. *New Haven*, supra, 63 Conn. App. 829, where a municipality simultaneously plays the role of self-insurer and self-insured, a plaintiff can recover only "the statutory minimum amount of underinsured motorist coverage because the applicable statutes impose no greater obligation on the city." In *Boynton*, the city of New Haven was a fully self-insured municipality that had not filed with the insurance commissioner's office any notice of its limitations of underinsured motorists coverage, as is also true in the present case. We explained that self-insurers are treated no

differently than commercial insurers, and General Statutes §§ 14-129 and 38a-371 (c) "do not impose greater liability on a self-insurer than they impose on a commercial insurer. . . . The fiscal responsibility, therefore, is the same for a self-insurer as it is for a commercial insurer." *Boynton* v. *New Haven*, supra, 822–23. Where a fully self-insured municipality had not defined its limits of underinsured motorists coverage, we refused to find the city's liability to be unlimited, and, instead, held that "[t]he applicability of the statutory minimum is reasonable because the exposure of commercial insurers is not unlimited." Id., 827. We see no reason to depart from that precedent in this case. West Haven was no less a self-insurer than New Haven merely because it purchased excess coverage where, apparently, New Haven had not.

Although the present case is distinguishable because West Haven is not a fully self-insured municipality and, therefore, its liability would not be unlimited, we conclude that this difference is not controlling and the reasoning of *Boynton* applies. The fact that West Haven has a $50,000 self-insured retention policy does not remove the presumption that a self-insured municipality elects the statutory minimum amount of coverage in the absence of a writing to the commissioner stating otherwise. See generally id., 827. A self-insured retention does not create a legal obligation to third parties. It means only that if a legal obligation otherwise exists arising out of a statute or contract, for example, the party retaining that risk must bear the loss without indemnity.

The plaintiff also argues that because West Haven never filed a notice with the commissioner that it was self-insured and never received a certificate of self-insurance, in accordance with §§ 14-129 and 38a-371, it was not legally self-insured. The plaintiff, although mentioning this in his appellate brief and at oral argument, provides no legal analysis as to what effect, if

any, this would have on his claim if true, and, therefore, we do not address it because it is inadequately briefed.

In this case, the plaintiff has cited nothing in the documentation before the trial court or in the record provided on appeal that created any legal obligation on the part of West Haven to pay more than the $20,000 minimum coverage required by § 14-112. He cites no collective labor contract that would require such a payment, nor does he cite any individual contract of employment that would do likewise. He cites no statutes that would create such an obligation. Although he recites an "expectancy" that he had by virtue of the fact that West Haven had paid claims in the past, and although West Haven admits that it did provide such payments prior to our holding in *Boynton* v. *New Haven*, supra, 63 Conn. App. 815, the plaintiff provides no legal authority or analysis on a claim relating to expectancy or estoppel, nor do we construe his complaint to make such a claim.

The plaintiff also argues that the fact that the Coregis insurance policy would provide coverage for underinsured motorist claims in excess of $50,000 would create "an absurd result" and would result in a "reductio ad absurdum" were we to affirm the trial court's judgment that the $50,000 self-insured retention provision did not provide a legal obligation for West Haven to provide that amount in underinsured motorists coverage. Underlying that argument is a contention that if the court's decision were to be affirmed, an insured, like the plaintiff, could never access the underinsured motorists coverage provided where the tortfeasor maintained only the statutory minimum liability insurance of $20,000. Such a result is not mandated, however.

We illustrate two scenarios in which an insured, like the plaintiff, might reach the excess coverage for underinsured motorists claims after looking to the policy

itself. The language of the commercial automobile "Connecticut Uninsured and Underinsured Motorists Coverage" endorsement page of the Coregis excess policy provides in relevant part that Coregis "will pay all sums the insured is legally entitled to recover as compensatory damages from the owner or driver of an uninsured motor vehicle. The damages must result from bodily injury sustained by the insured caused by an accident. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of [an] uninsured motor vehicle or underinsured motor vehicle." (Internal quotation marks omitted.) Therefore, even if only $20,000 is available from a tortfeasor's insurance or from a self-insured municipality that does not elect to self-insure for more than the $20,000 minimum underinsured motorists coverage mandated by statute, nothing prevents a claimant from litigating and establishing the tortfeasor's liability to him in an amount greater than his insurance coverage. As long as the liability of the tortfeasor exceeds the $50,000 liability that triggers the excess policy, the insurance company, in this case Coregis, appears to be obligated by the language of the policy to provide benefits once that floor is reached even if the tortfeasor maintained only $20,000 in liability insurance coverage.

The second way to reach the excess policy, as was conceded by the plaintiff at oral argument, may be where the tortfeasor's liability policy meets or exceeds the $50,000 threshold, and the claimant *exhausts* that policy and then seeks the excess insurance coverage.

Nevertheless, despite these apparent methods of reaching the excess policy, a claimant also has a right to settle the legal liability of the tortfeasor for a sum less than his sustained damages, which might be in excess of $50,000, thereby limiting the liability of the tortfeasor to the claimant to less than the threshold that triggers the coverage under the excess policy. It

appears that the plaintiff, here, chose to exercise such a right in this case.

The judgment is affirmed.

In this opinion the other judges concurred.