WENDY MCDONALD ET AL. *v.* NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA
(AC 22876)

Lavery, C. J., and Schaller and Peters, Js.

Argued March 18—officially released October 7, 2003

*David A. Zipfel*, with whom was *Donna M. Britschgi*, for the appellants (plaintiffs).

*Anne Kelly Zovas*, with whom, on the brief, was *Courtney C. Stabnick*, for the appellee (defendant).

*Opinion*

SCHALLER, J. The plaintiffs, Wendy McDonald and John McDonald, appeal from the summary judgment rendered in favor of the defendant, National Union Fire Insurance Company of Pittsburgh, PA, in this action to recover underinsured motorists benefits. The plaintiffs sought to recover benefits under a policy issued by the defendant to Wendy McDonald's employer, Cumberland Farms, Inc. On appeal, the plaintiffs claim that the trial court improperly (1) determined that the monetary limits on the underinsured motorists policy had been reduced to the statutory minimum of $20,000 and (2) speculated that the defendant, rather than Cumberland Farms, Inc., would write any checks payable to claimants under the policy. We affirm the judgment of the trial court.

The following facts are undisputed. Wendy McDonald was involved in a three car accident that occurred on June 23, 1999. At the time of the accident, she was

driving a car owned by Cumberland Farms, Inc., and was acting within the scope of her employment. She sustained serious injuries necessitating at least eight surgical procedures. The plaintiffs brought an action seeking damages from Janice Schofield, the driver responsible for the accident, but Schofield's liability policy limit was $20,000, which was not enough to cover the damages sustained by the plaintiffs. The plaintiffs' action against Schofield was settled for $20,000.

The plaintiffs then instituted this action seeking underinsured motorists benefits from the defendant, which insured a fleet of vehicles owned by Cumberland Farms, Inc., including the vehicle driven by Wendy McDonald. The operative complaint consists of two counts[1] seeking underinsured motorists benefits from the defendant pursuant to the policy it issued to Cumberland Farms, Inc. The defendant denied most of the allegations set forth in the complaint and asserted two special defenses. In the first special defense, the defendant alleged that the plaintiffs' action was barred by General Statutes § 38a-336 (b). In the second special defense, the defendant alleged that the plaintiffs' damages were limited to the $20,000 policy limit less any applicable credits or setoffs available by law, statute or regulation. The plaintiffs filed a reply denying the allegations of the special defenses.

The defendant subsequently filed a motion for summary judgment. In support of its motion, the defendant argued that Cumberland Farms, Inc., had elected to reduce the limit on its underinsured motorists policy to the statutory minimum of $20,000, and that the plaintiffs, having previously received $20,000 from Schofield, therefore were not entitled to benefits under the policy.

---

[1] The first count was brought by Wendy McDonald, and the second count was brought by her husband, John McDonald, under a theory of loss of consortium.

The court granted the defendant's motion. Additional facts will be set forth as necessary.

"The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 450, 820 A.2d 258 (2003). For purposes of a motion for summary judgment, "[a] material fact is a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) *Stokes* v. *Lyddy*, 75 Conn. App. 252, 257, 815 A.2d 263 (2003). Having set forth that standard, we now turn to the plaintiffs' specific claims.

I

The plaintiffs claim that the court improperly determined that the limits on the underinsured motorists policy had been reduced to the statutory minimum of $20,000. Specifically, the plaintiffs argue that the attempt by Cumberland Farms, Inc., to reduce the underinsured motorists policy limits was ineffective because (1) the informed consent form signed by Cumberland Farms, Inc., did not comply with the requirements of § 38a-336 (a) (2)[2] and the policy was subject to a deductible. We address those arguments in turn.

---

[2] General Statutes § 38a-336 (a) (2) provides: "Notwithstanding any provision of this section to the contrary, each automobile liability insurance policy issued or renewed on and after January 1, 1994, shall provide uninsured and underinsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless any named insured requests in writing a lesser amount, but

## A

The plaintiffs argue that the attempt by Cumberland Farms, Inc., to reduce the underinsured motorists policy limit to $20,000 was ineffective because the informed consent form signed by Cumberland Farms, Inc., did not comply with the requirements of § 38a-336 (a) (2). Specifically, the plaintiffs argue that the form signed by Cumberland Farms, Inc., did not "contain . . . the premium cost for each of the coverage options available from the insurer," as required by § 38a-336 (a) (2) (C).

The evidence submitted by the defendant in support of its motion for summary judgment established the following additional facts, which the plaintiffs do not dispute on appeal. The automobile insurance policy provided to Cumberland Farms, Inc., by the defendant had a liability limit of $2 million. Cumberland Farms, Inc., through its risk manager, John Shankey, requested a reduction of its uninsured and underinsured coverage limits to the statutory minimum of $20,000. The informed consent form that Shankey signed did not contain the premium costs for the various coverage options available from the defendant.

not less than the limits specified in subsection (a) of section 14-112. Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by any named insured. No such written request for a lesser amount shall be effective unless any named insured has signed an informed consent form which shall contain: (A) An explanation of uninsured and underinsured motorist insurance approved by the commissioner; (B) a list of uninsured and underinsured motorist coverage options available from the insurer; and (C) the premium cost for each of the coverage options available from the insurer. Such informed consent form shall contain a heading in twelve-point type and shall state: 'WHEN YOU SIGN THIS FORM, YOU ARE CHOOSING A REDUCED PREMIUM, BUT YOU ARE ALSO CHOOSING NOT TO PURCHASE CERTAIN VALUABLE COVERAGE WHICH PROTECTS YOU AND YOUR FAMILY. IF YOU ARE UNCERTAIN ABOUT HOW THIS DECISION WILL AFFECT YOU, YOU SHOULD GET ADVICE FROM YOUR INSURANCE AGENT OR ANOTHER QUALIFIED ADVISER.' "

The court concluded in its memorandum of decision that "it is abundantly clear from a reading of the many documents and affidavits that it was the clear intention of Cumberland Farms, Inc., [the defendant] and all of the agents and intermediaries that the fleet policy in question carried [uninsured motorists-underinsured motorists] limits of $20,000-$40,000. The plaintiff has submitted no evidence to the contrary." The court further concluded that "[s]trict adherence to the procedures mandated by § 38a-336 (a) (2) in order to reduce [uninsured motorists-underinsured motorists] coverage simply is not required in the context of commercial fleet insurance." We agree with the court.

Section 38a-336 (a) (2) sets forth several criteria that a written request to reduce underinsured motorists coverage must contain. To be effective, the request generally must have all of the named insureds sign an informed consent form that contains: "(A) An explanation of uninsured and underinsured motorist insurance approved by the [insurance] commissioner; (B) a list of uninsured and underinsured motorist coverage options available from the insurer . . . (C) the premium cost for each of the coverage options available from the insurer"; General Statutes § 38a-336 (a) (2); and a heading indicating the importance of uninsured and underinsured insurance.

"[O]ne of the guiding principles underlying the requirement of a written rejection of higher limits is to assure that the rejection is the product of a 'purposeful and knowing decision'; *Travelers Indemnity Co.* v. *Malec*, 215 Conn. 399, 403, [576 A.2d 485] (1990); and that the request is an 'informed one.' *Nationwide Mutual [Ins.] Co.* v. *Pasion*, 219 Conn. 764, 771, [594 A.2d 468] (1991)." J. Berk & M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (2d Ed. 1999) § 1.10.3, p. 110.

In *Frantz* v. *United States Fleet Leasing, Inc.*, 245 Conn. 727, 739, 714 A.2d 1222 (1998), our Supreme Court held that § 38a-336 (a) (2) does not require the signatures of all insured parties in the commercial fleet context. The Supreme Court reached that holding by determining that the purpose of § 38a-336 (a) (2) was to ensure that consumers made informed and conscious choices when deciding whether to reduce uninsured and underinsured insurance coverage. Id., 737–38. The Supreme Court stated that "[a]though a corporation like Fleet Leasing may be considered a 'consumer' of insurance in the broadest sense of that word, we do not believe that a company that, like Fleet Leasing, is covered under a commercial fleet policy, falls within the class of consumers that the legislature sought to protect in requiring the signature of all named insureds under § 38a-336 (a) (2). Fleet Leasing, like many other large corporations covered under commercial fleet policies, has departments that specialize in legal and insurance matters. It is highly likely, therefore, that the Fleet Leasing personnel who negotiated the insurance provisions of the lease contract with General Dynamics were fully aware of the relative cost of uninsured motorist coverage and the implications of their decision . . . ." Id., 739. The Supreme Court stated that it would "not ignore the fact that commercial fleet insurance gives rise to a significantly different set of expectations and considerations than does personal automobile insurance." Id., 741–42.

Section 38a-336 (a) (2) also has been interpreted to impose lesser requirements on self-insurers. In *Boynton* v. *New Haven*, 63 Conn. App. 815, 829, 779 A.2d 186, cert. denied, 258 Conn. 905, 782 A.2d 136 (2001), we held that a self-insurer does not need to provide written notice when it chooses to reduce its uninsured and

underinsured coverage.[3] We stated that "[a] literal reading of the statute would have required the [defendant], wearing its hat as insured, to file a written request with itself, wearing its hat as insurer. That reading is untenable . . . [and] it would be an exercise in futility to require the [defendant] to file a written request with itself." Id., 828–29.

The reasoning of *Frantz* and *Boynton* dictates the resolution of the issue in the plaintiffs' appeal. Cumberland Farms, Inc., is a large commercial entity. Its insurance premiums range from $127,459 to $518,207. Here, as in *Frantz*, "[i]t is highly likely . . . that the . . . personnel who negotiated the insurance provisions of the [insurance] contract . . . were fully aware of the relative cost of uninsured motorist coverage and the implications of their decision . . . ." *Frantz* v. *United States Fleet Leasing, Inc.*, supra, 245 Conn. 739.

The purpose of § 38a-336 (a) (2), including the provision requiring that insurers inform consumers of the premium cost for each of the underinsured motorists coverage options available, is to facilitate consumers' decision-making process and to ensure that they give informed consent to reduced coverage. We do not believe that a company such as Cumberland Farms, Inc., which insures a fleet of vehicles to carry on a large commercial enterprise, falls within the class of consumers that the legislature sought to protect when it mandated the disclosure of premium costs under § 38a-336 (a) (2). Consequently, the fact that the informed consent form in the present case did not contain a statement of premium costs does not defeat the election by Cumberland Farms, Inc., to reduce its underinsured motorists coverage limits to $20,000.

---

[3] Although *Boynton* involved a self-insurer, "self-insurers are treated no differently than commercial insurers . . . ." *Serra* v. *West Haven*, 77 Conn. App. 267, 272–73, 822 A.2d 1018 (2003).

## B

The plaintiffs also argue that the attempt by Cumberland Farms, Inc., to reduce the underinsured motorists policy limits was ineffective because the policy was subject to an illegal deductible. Specifically, the plaintiffs maintain that the defendant and Cumberland Farms, Inc., arrived at an arrangement, separate from the subject policy, pursuant to which Cumberland Farms, Inc., would shoulder the cost of paying any claims under the policy. According to the plaintiffs, that alleged arrangement was improper because Cumberland Farms, Inc., essentially became a self-insurer without complying with the provisions of General Statutes § 14-129[4] and because a deductible on an uninsured motorists policy is illegal. For those reasons, the plaintiffs assert, the request by Cumberland Farms, Inc., to reduce its policy limit was invalid. We are not persuaded.

Even if we assume arguendo that the plaintiffs are correct in their assertions that the defendant and Cumberland Farms, Inc., entered into an agreement making Cumberland Farms, Inc., financially responsible for paying claims under the subject policy and that such an agreement is unlawful, we are unable to see why those factors would render the election by Cumberland

---

[4] General Statutes § 14-129 provides: "(a) Any person in whose name more than twenty-five motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the commissioner as provided in subsection (b) of this section.

"(b) The commissioner may, in his discretion, upon the application of such person, issue a certificate of self-insurance when he is satisfied that such person is possessed and will continue to be possessed of ability to pay judgments obtained against such person.

"(c) Upon not less than five days' notice and a hearing pursuant to such notice, the commissioner may, upon reasonable grounds, cancel a certificate of self-insurance. Failure to pay any judgment within thirty days after such judgment has become final shall constitute a reasonable ground for the cancellation of a certificate of self-insurance."

Farms, Inc., of the minimum underinsured motorists policy limit invalid and therefore entitle the plaintiffs to avail themselves of $2 million of coverage. We are not aware of any legal principle that would provide a basis for such a result.

We note that the present action is one on the underinsured motorists policy; the sole theory of liability set forth in the plaintiffs' complaint is that the defendant has a duty under the policy to pay benefits to the plaintiffs. "In an action on an insurance policy, the conduct giving rise to the insurer's liability is a failure to pay out the policy proceeds when the insurer is contractually bound to do so. . . . [T]he insurer's duty to comply with the policy provisions stems from the private insurance agreement and is contractual in nature." *Lees* v. *Middlesex Ins. Co.*, 219 Conn. 644, 653, 594 A.2d 952 (1991). Pursuant to the insurance policy in the present case, the defendant is required to provide only the level of coverage that it has agreed with Cumberland Farms, Inc., to provide. As we stated in part I A, Cumberland Farms, Inc., made a valid election to purchase only the minimum level of underinsured motorists coverage.

Moreover, Cumberland Farms, Inc., does not have a duty to provide more than minimum coverage. As previously stated, it is well established that any insured may elect to carry only the statutory minimum underinsured motorists coverage of $20,000. See General Statutes §§ 38a-336 (a) (2) and 14-112 (a). It also is now well established that self-insurers need only provide that same minimum level of coverage. See *Serra* v. *West Haven*, 77 Conn. App. 267, 272, 822 A.2d 1018 (2003); *Boynton* v. *New Haven*, supra, 63 Conn. App. 827. "The applicability of the statutory minimum is reasonable because the exposure of commercial insurers is not unlimited. . . . [S]elf-insurers are entitled to the same protection as is afforded to commercial insurers." *Boynton* v. *New Haven*, supra, 827. Thus, to an

employee such as Wendy McDonald, it makes no practical difference whether the employer maintains uninsured motorists coverage by purchasing an insurance policy or by way of self-insurance; in either case, the employer may choose to provide only the minimum coverage required by statute. Thus, from the employee's point of view, the details of the employer's arrangements for providing the required coverage are not relevant as long as the coverage is provided.[5]

The plaintiffs have not explained how the arrangement that they claim exists between Cumberland Farms, Inc., and the defendant would create a duty on the part of the defendant to provide more than minimum coverage. Any such arrangement would not change the plaintiffs' entitlement under the subject policy. Thus, even if we assume that the facts asserted by the plaintiffs are true, they are not material because they do not make a difference in the result of the case. See *Stokes* v. *Lyddy,* supra, 75 Conn. App. 257. We agree with the court that there is no nexus between who ultimately

[5] Because the plaintiffs' action was brought against the defendant insurer and not against Cumberland Farms, Inc., the plaintiffs' argument that Cumberland Farms, Inc., is self-insured, if taken to its logical conclusion, would seem to bar any recovery. Because the plaintiffs' entire case depends on the existence of a valid underinsured motorists policy, the plaintiffs have taken the position throughout their brief that the alleged arrangement between the defendant and Cumberland Farms, Inc., invalidated the election by Cumberland Farms, Inc., of reduced coverage, but did not invalidate the policy itself. No analysis has been provided as to the basis, in law or in fact, for drawing that distinction.

Indeed, at certain points in their brief, the plaintiffs appear to struggle with that distinction and argue, contrary to the allegations of their complaint, that there is in fact no valid underinsured motorists policy in effect. Specifically, they state: "Viewing the facts in a light most favorable to the plaintiffs suggests there was no [uninsured motorists-underinsured motorists] coverage provided." They further state that "viewing the evidence in a light most favorable to the plaintiffs, the defendant . . . provided no underinsured motorists coverage at all." Those statements could be read as a concession by the plaintiffs that they have no case. Because we affirm the judgment of the court on other grounds, however, we need not make that determination.

pays the benefits under the policy and the effectiveness of the insured's election of reduced coverage. As the court noted, Cumberland Farms, Inc., clearly and unequivocally elected to provide the statutory minimum coverage to its employees. The plaintiffs' assertion of an illegal self-insurance arrangement would not invalidate that election. The court therefore properly concluded that the limits on the underinsured motorists policy had been reduced to the statutory minimum of $20,000.

## II

The plaintiffs next claim that the court improperly speculated that the defendant, rather than Cumberland Farms, Inc., would write any checks payable to claimants under the policy. We are not persuaded.

In its memorandum of decision, the court stated: "The plaintiffs also suggest that the request for the reduction of coverage was ineffective because Cumberland Farms, Inc., was, at the $20,000-40,000 level, effectively a self-insured. It may well be, as suggested [previously], that there was an arrangement in effect such that Cumberland Farms, Inc., ended up paying for such claims. Yet, there is no suggestion that regardless of the specifics of the arrangement, the clear and unequivocal intent of the insurer and the insured was anything other than to provide coverage equal to the statutory minimum. I do not see how a result of the insured's paying, one way or another, the amount of the minimum coverage has any effect on the effectiveness of the election of coverage. And, as indicated [previously], our appellate courts have consistently held that the specific requirements of § 38a-336 (a) (2) do not strictly apply to commercial fleet policies." In a footnote, the court stated that "[a]ny check to claimants presumably would be written by National Union." That footnote forms the basis of the plaintiffs' claim.

The plaintiffs concede that they do "not view this factual finding in itself as important . . . ." They nevertheless cite the footnote as significant in that "[i]t served to *justify the court's opinion* . . . ." They further argue that the sentence "does illuminate the underpinnings of the court's decision" and "is an example of the approach the court took in this case."

We can see no way to reconcile the plaintiffs' argument that the court's statement "served to justify the court's opinion" with its concession of the unimportance of the footnote. We already have determined that any arrangement between Cumberland Farms, Inc., and the defendant regarding who would ultimately provide payment for claims under the policy would be irrelevant to the plaintiffs' case. Consequently, as the plaintiffs' concession seems to recognize, the court's presumption regarding who would write a check could not have made any difference in the outcome of the case. It therefore did not constitute a material fact. See id. The court properly determined that there were no genuine issues of material fact and that the defendant was entitled to judgment as a matter of law.

The judgment is affirmed.

In this opinion the other judges concurred.