STEPHEN PIERSA *v.* PHOENIX INSURANCE COMPANY ET AL.
(AC 24188)

Dranginis, McLachlan and Stoughton, Js.

Argued January 9—officially released May 11, 2004

*Jon Berk*, for the appellant (plaintiff).

*William J. Melley III*, for the appellee (defendant city of Hartford).

*Opinion*

DRANGINIS, J. In this appeal, the plaintiff, Stephen Piersa, raises a question of law as to whether a self-insured municipal employer must create a writing giving notice of its intention to reduce its uninsured motorist coverage by the amount of workers' compensation benefits (compensation benefits) paid to an employee. We conclude that a self-insured municipal employer may reduce the limits of its uninsured motorist coverage by the amount of compensation benefits paid without creating a writing. We, therefore, affirm the judgment of the trial court.

There is no dispute as to the following facts that are relevant to the plaintiff's appeal from the summary judgment rendered in favor of the defendant city of Hartford.[1] On January 15, 1997, the plaintiff was employed by the defendant as a police officer. On that date, while responding to a call for assistance, the plaintiff sustained personal injuries when an uninsured

---

[1] In this opinion, we refer to the city of Hartford as the defendant. The defendant Phoenix Insurance Company is not a party to the appeal.

motor vehicle collided with his police cruiser. As a result of the injuries he sustained, the plaintiff incurred medical expenses and lost time from his employment. The defendant paid him $42,261.69 in compensation benefits due to his injuries and financial loss. At the time of the accident, the defendant was a self-insured municipality with uninsured motorist coverage limits of $20,000 per person and $40,000 per occurrence.

The plaintiff commenced this action, seeking uninsured motorist benefits from his own insurance carrier, Phoenix Insurance Company, and the defendant. Only his claim against the defendant is at issue in this appeal. In his amended complaint, the plaintiff alleged the facts concerning his employment and the subject collision. He also alleged that the police cruiser was a self-insured motor vehicle and that the defendant had breached its statutory duty to provide him with uninsured motorist benefits. In response, the defendant denied that it was in breach and alleged four special defenses, including one that "[t]he insurance coverage on the police vehicle is offset by [w]orkers' [c]ompensation benefits received by [the] plaintiff." After the plaintiff filed a single general denial of the defendant's several special defenses,[2] the defendant filed a motion for summary judgment.

In its motion for summary judgment, the defendant claimed that as a matter of law, it was not required to provide uninsured motorist coverage for the police cruiser because it was not a private passenger type of vehicle pursuant to General Statutes § 38a-363 (e) and that the defendant was entitled to reduce its uninsured motorist coverage by the amount of compensation benefits it had paid the plaintiff, citing *Boynton* v. *New Haven*, 63 Conn. App. 815, 779 A.2d 186, cert. denied,

---

[2] The plaintiff's reply to the defendant's special defenses alleged: "The [p]laintiff in the captioned matter hereby denies each and every allegation set forth in the [d]efendant's . . . [s]pecial [d]efenses."

258 Conn. 905, 782 A.2d 136 (2001). The court disagreed that the police cruiser was not a private passenger type of vehicle. The court agreed, however, that the defendant was entitled to reduce its uninsured motorist coverage by the amount of compensation benefits it had paid the plaintiff and granted the motion for summary judgment.

In reaching its decision, the court relied on *Boynton*, noting that after a court determines that the statutory minimum of $20,000 is applicable, a claimant's receipt of workers' compensation benefits in excess of that amount forecloses his further reimbursement from the municipality. See *Boynton* v. *New Haven*, supra, 63 Conn. App. 827–28. Because the plaintiff here had received compensation benefits in excess of the statutory minimum, he was foreclosed from seeking further reimbursement from the defendant.

The plaintiff appealed, claiming, as he had argued in his objection to the motion for summary judgment, that the defendant may not reduce its uninsured motorist coverage by the amount of compensation benefits paid because it failed to exercise its permissive right to do so by means of a writing. In granting the defendant's motion for summary judgment, however, the court did not address the plaintiff's argument that the defendant was required to create a writing, but limited its decision to the bases asserted in the defendant's second, third and fourth special defenses. The plaintiff failed to seek an articulation. See Practice Book § 66-5.

Our scope of review of the court's decision to grant a motion for summary judgment is plenary. *H.O.R.S.E. of Connecticut, Inc.* v. *Washington*, 258 Conn. 553, 560, 783 A.2d 993 (2001). Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled

to judgment as a matter of law." Practice Book § 17-49. "A material fact is a fact that will make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings." (Citation omitted; internal quotation marks omitted.) *Mountaindale Condominium Assn., Inc.* v. *Zappone*, 59 Conn. App. 311, 315, 757 A.2d 608, cert. denied, 254 Conn. 947, 762 A.2d 903 (2000).

Our plenary review of the pleadings discloses that the plaintiff never made the need for a writing a question of material fact or a legal issue in the case because he failed to plead it in response to the defendant's special defense regarding the deduction of compensation benefits from the available uninsured motorist's coverage.[3] In addition to taking note of the absence of a pleading regarding the need for a writing, we also note that the plaintiff failed to provide sufficient evidence to the court that a writing did not exist or to create a genuine issue as to whether one existed.[4]

Even though we do not have the benefit of the court's reasoning as to whether the defendant was required to create a writing to reduce its uninsured motorist

[3] Practice Book § 10-57 provides: "Matter in avoidance of affirmative allegations in an answer or counterclaim shall be specially pleaded in the reply. Such a reply may contain two or more distinct avoidances of the same defense or counterclaim, but they must be separately stated." See also Practice Book § 10-1.

[4] On appeal, the plaintiff appears cognizant of his failure in the trial court. The appendix attached to his brief contains the defendant's answers to interrogatories and a document the plaintiff asserts supports his contention that the defendant failed to state in writing that it intended to set off its uninsured motorist benefits by the amount of workers' compensation benefits paid. Although we note that neither of these documents prove the plaintiff's point, they are not properly before this court on appeal, as they are not part of the record and were not before the trial court for its consideration. See *State* v. *Evans*, 9 Conn. App. 349, 354, 519 A.2d 73 (1986) ("[i]n deciding a case, this court cannot resort to matters extraneous to the formal record, to facts which have not been found and which are not admitted in the pleadings, or to documents or exhibits which are not part of the record").

coverage by the amount of workers' compensation benefits paid or a determination as to whether a writing existed, the defendant has conceded that the facts underlying the appeal are not in dispute. The only issue on appeal, therefore, is a pure question of law. The absence of the court's reasoning on the issue does not bar appellate review de novo. See *Ammirata* v. *Zoning Board of Appeals*, 264 Conn. 737, 745–46, 826 A.2d 170 (2003).[5]

The plaintiff claims that the defendant is in breach of its statutory duty, pursuant to General Statutes §§ 14-129,[6] 38a-371[7] and 38a-

[5] The court may have limited its decision to the grounds asserted in the defendant's special defense because the plaintiff failed to plead his claim regarding the need for a writing in a reply to the defendant's special defense. Practice Book § 10-57 provides in relevant part that matters in avoidance of affirmative allegations "shall be specifically pleaded in the reply . . . ." In light of that rule, a court may refuse to address a claim in the absence of such a pleading. See *Schilberg* v. *Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 273–75, 819 A.2d 773 (2003) (court did not abuse its discretion by failing to consider claim not pleaded in avoidance of special defense). Here, it is not clear whether the court refused to address the matter due to the failure to plead it or whether it considered the claim, as raised in the plaintiff's objection to the motion for summary judgment, and rejected it without comment. Although we do not approve of the plaintiff's failure to plead in accordance with our rules of practice, this failure does not preclude appellate review of an issue of law.

[6] General Statutes § 14-129 provides: "(a) Any person in whose name more than twenty-five motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the commissioner as provided in subsection (b) of this section.

"(b) The commissioner may, in his discretion, upon the application of such person, issue a certificate of self-insurance when he is satisfied that such person is possessed and will continue to be possessed of ability to pay judgments obtained against such person."

[7] General Statutes § 38a-371 provides in relevant part: "(a) (1) The owner of a private passenger motor vehicle required to be registered in this state shall provide and continuously maintain throughout the registration period security in accordance with sections 38a-334 to 38a-343, inclusive. . . .

"(b) The security required by this section, may be provided by a policy of insurance complying with this section issued by or on behalf of an insurer licensed to transact business in this state . . . .

"(c) Subject to approval of the Insurance Commissioner the security required by this section, may be provided by self-insurance by filing with the commissioner in satisfactory form: (1) A continuing undertaking by the

336,[8] to provide uninsured motorist benefits because it may not reduce uninsured motorist coverage by the amount of benefits paid without first creating a writing. To support his argument, the plaintiff relies on the state insurance regulations.

Section 38a-334-6 (d) of the Regulations of Connecticut State Agencies provides in relevant part: "The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the General Statutes, except that the *policy* may provide for the reduction of limits to the extent that damages have been . . . (B) *paid or are payable under any workers' compensation law* . . . ."[9] (Emphasis added.) The

owner or other appropriate person to perform all obligations imposed by this section; (2) evidence that appropriate provision exists for the prompt and efficient administration of all claims, benefits, and obligations provided by this section; and (3) evidence that reliable financial arrangements, deposits or commitments exist providing assurance for payment of all obligations imposed by this section substantially equivalent to those afforded by a policy of insurance that would comply with this section. A person who provides security under this subsection is a self-insurer. A municipality may provide the security required under this section by filing with the commissioner a notice that it is a self-insurer."

[8] General Statutes § 38a-336 provides in relevant part: "(a) (1) Each automobile liability insurance policy shall provide insurance, herein called uninsured and underinsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles . . . because of bodily injury, including death resulting therefrom. . . .

"(b) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured and underinsured motorist coverage after the limits of liability under all bodily injury bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured and underinsured motorist coverage, exceed the limits of the insured's uninsured and underinsured motorist coverage. . . ."

[9] Section 38a-334-6 of the Regulations of Connecticut State Agencies provides: "(a) Coverage. The insurer shall undertake to pay on behalf of the

plaintiff claims that because the regulation permits, not mandates, a reduction of uninsured motorist benefits for compensation benefits paid, the defendant was required to adopt it explicitly by means of a writing. We are not persuaded.

insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured or underinsured motor vehicle. This coverage shall insure the occupants of every motor vehicle to which the bodily injury liability coverage applies. 'Uninsured motor vehicle' includes a motor vehicle insured against liability by an insurer that is or becomes insolvent.

"(b) Arbitration. The insurance may provide but not require that the issues of liability as between the insured and the uninsured or underinsured motorist, and the amount of damages, be arbitrated. The insurer may provide against being bound by any judgment against the uninsured or underinsured motorist.

"(c) Exclusions. The insurer's obligations to pay may be made inapplicable:

"(1) To any claim which has been settled with the uninsured motorist without the consent of the insurer;

"(2) if the uninsured or underinsured motor vehicle is owned by

"(A) the named insured or any relative who is a resident of the same household or is furnished for the regular use of any of the foregoing,

"(B) a self insurer under any motor vehicle law, or

"(C) any government or agency thereof;

"(3) to pay or reimburse for workers' compensation or disability benefits.

"(d) Limits of liability.

"(1) The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the General Statutes, except that the policy may provide for the reduction of limits to the extent that damages have been

"(A) paid by or on behalf of any person responsible for the injury,

"(B) paid or are payable under any workers' compensation law, or

"(C) paid under the policy in settlement of a liability claim.

"(2) The policy may also provide that any direct indemnity for medical expense paid or payable under the policy will reduce the damages which the insured may recover under this coverage.

"(3) Any payment under these coverages shall reduce the company's obligation under the bodily injury liability coverage to the extent of the payment. . . .

"(e) Recovery over. With respect to the uninsured motorist coverage, the insurer may require the insured to hold in trust all rights against third parties or to exercise such rights after the insurer has paid any claim, provided that the insurer shall not acquire by assignment, prior to settlement or

We first look at *Boynton* v. *New Haven*, supra, 63 Conn. App. 815, on which the court relied, because the plaintiff claims that the language cited by the court is merely dicta. Id., 827–28 (once it is determined that statutory minimum is applicable, plaintiff's receipt of $25,000 from tortfeasor foreclosed his access to further reimbursement from defendant city). We agree that the cited language is dicta. Furthermore, the statutes and questions in *Boynton* are not on point with respect to the question before us now. *Boynton*, however, discusses the distinction between a commercial insurer and a self-insurer, and why a self-insurer need not provide written notice to itself. Id., 828–29.

The plaintiff in *Boynton* also was a police officer injured in the line of duty. Id., 818. He claimed that the defendant city, which was self-insured, was required to provide underinsured motorist coverage in parity with its liability coverage and that "the city could not invoke the statutory minimum without having executed a written waiver or notice." Id., 826. Here, we are only interested in the second part of the issue. *Boynton* concerned § 38a-336 (a) (2), which, in 1993, when the incident at issue in that case occurred, permitted "commercial insurers to limit their liability, and thereby to reduce insurance premiums, upon the *written request* of the insured." (Emphasis in original.) Id., 828.

The court disagreed with the plaintiff because, under the circumstances of that case, it would make no sense to apply the written request requirement of the statute literally. "[U]pon electing to become a self-insurer, [the city] not only became an insurer . . . but also, the functional equivalent of a named insured . . . . A literal reading of the statute would have required the city, wearing its hat as insured, to file a written request with

judgment, its insured's right of action to recover for bodily injury from any third party."

itself, wearing its hat as insurer. That reading is untenable.

"As the city notes, self-insurer status with respect to its fleet of passenger motor vehicles bears a closer resemblance to fleet insurance generally. [F]leet insurance gives rise to a significantly different set of expectations and considerations than does personal automobile insurance. . . .

"[T]he primary legislative purpose in requiring a written request for a reduction in uninsured motorist coverage is to ensure that one named insured not be bound, to his or her detriment, by the unilateral decision of another named insured to seek such a reduction. . . . Such a concern has little or no applicability in the context of a commercial fleet policy. . . .

"In light of this legislative purpose, we are persuaded that it would be an exercise in futility to require the city to file a written request to itself. We presume that the legislature did not intend such an outcome." (Citations omitted; internal quotation marks omitted.) Id., 828–29.

We agree with the legal reasoning and commonsense approach of *Boynton* that a self-insurer is the functional equivalent of both an insurer and an insured, and that it is untenable to expect that a self-insurer explicitly must tell itself by means of a writing that it intends to adopt the permissive reduction of the insurance regulations in order to do so. Our construction of § 38a-334-6 of the Regulations of Connecticut State Agencies and review of the relevant statutes and case law give further support to our conclusion. We begin with the regulation.

"Agency regulations, appropriately issued, have the force and effect of a statute. . . . We therefore construe agency regulations in accordance with accepted rules of statutory construction. . . . Just as it is

accepted that the legislature does not enact superfluous statutes . . . the same is true of administrative regulations." (Citations omitted.) *Gianetti* v. *Norwalk Hospital*, 211 Conn. 51, 60, 557 A.2d 1249 (1989).

"The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Boynton* v. *New Haven*, supra, 63 Conn. App. 822.

"[T]he legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires us to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction. . . . In applying these principles, we are mindful that the legislature is presumed to have intended a just and rational result." (Internal quotation marks omitted.) *Secretary of the Office of Policy & Management* v. *Employees' Review Board*, 267 Conn. 255, 278, 837 A.2d 770 (2004) (*Zarella, J.*, concurring).

The basis of the plaintiff's claim lies in the wording of the insurance regulations governing uninsured motorist coverage, specifically that "[t]he limit of the insurer's liability may not be less than the applicable limits for

bodily injury liability . . . except that the *policy* may provide for the reduction of limits to the extent that damages have been . . . (B) paid or are payable under any workers' compensation law . . . ." (Emphasis added.) Regs., Conn. State Agencies § 38a-334-6 (d). "In the absence of express statutory guidance, we normally construe words used in statutes and regulations according to their commonly approved usage." (Internal quotation marks omitted.) *Hartford* v. *Hartford Municipal Employees Assn.*, 259 Conn. 251, 264, 788 A.2d 60 (2002). In this case, we have the benefit of a statutory definition of the word policy to guide us.

" 'Policy' means any document, including attached endorsements and riders, purporting to be an enforceable contract, which memorializes in writing some or all of the terms of an *insurance* contract." (Emphasis added.) General Statutes § 38a-1 (15). " 'Insurance' means any agreement to pay a sum of money, provide services or any other thing of value on the happening of a particular event or contingency or to provide indemnity for loss in respect to a specified subject by specified perils in return for a consideration. In any *contract of insurance*, an insured shall have an interest which is subject to a risk of loss through destruction or impairment of that interest, which risk is assumed by the insurer and such assumption shall be part of a general scheme to distribute losses among a large group of persons bearing similar risks in return for a ratable contribution or other consideration." (Emphasis added.) General Statutes § 38a-1 (10).

In the context of uninsured motor vehicle coverage, a self-insured municipality is the *functional equivalent* of an insurer and an insured. See *Conzo* v. *Aetna Ins. Co.*, 243 Conn. 677, 683, 705 A.2d 1020 (1998). There is no question that the functional statutory requirements related to uninsured motorist coverage apply to self-insurers as well as to commercial insurers. Id. The statu-

tory definition of policy, the word used in the regulation, however, refers to an insurance contract. Our statutes define a *contract of insurance*, in part, as the interest an insured has in a risk that is assumed by an insurer as "part of a general scheme to distribute losses among a large group of persons bearing similar risks in return for a ratable contribution or other consideration." General Statutes § 38a-1 (10).

When determining that a self-insurer under our workers' compensation statutes is not an insurer for purposes of the Connecticut Insurance Guaranty Association Act, General Statutes § 38a-836 et seq., our Supreme Court found that there is "substantial authority for the position that self-insurance is not insurance at all." *Doucette* v. *Pomes*, 247 Conn. 442, 459, 724 A.2d 481 (1999) (certificate of self-insurance cannot be equated with insurance contract or policy). "Scholars have discussed self-insurance as follows: Risk transference or risk distribution may be accomplished without using insurance. . . . For example, entities that provide goods or services to many individuals . . . could choose to handle the risk of personal injury claims by setting aside assets—either by accounting entries or by actually establishing a special fund—from which it will pay such claims, *rather than by purchasing insurance.* . . . Although an entity that handles the risk of tort claims in this manner is sometimes referred to as a self-insurer, this approach involves no insurance as the term is ordinarily used in regulatory statutes or in other legal contexts. . . . Self-insurance as a technique for treating risk has long been surrounded with confusion and controversy. . . . For those who believe that transfer of risk is a requisite for insurance, the term self-insurance is a misnomer since it permits no transfer. . . . Even the language of [General Statutes § 31-284 (b)] supports this view of self-insurance. It provides that unless an employer can prove its solvency and financial

ability to pay [compensation] directly to injured employees, it must insure [its] full liability under the Workers' Compensation Act. . . . Thus, the section distinguishes between insurance and an employer's retention of its own risk to pay compensation." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 458–59.

Our Supreme Court then reasoned: "In the appeal before us, [the intervening plaintiff] did not purchase insurance to cover its risk. Rather, it complied with the Workers' Compensation Act by retaining its own risk. It did not thereby become transformed into an insurer. Rather, it retained its character as an employer that simply elected to pay the expenses associated with its employees' work-related accidents. Although this is commonly referred to as self-insuring, there was no transfer of risk, which is generally considered to be an essential element of an insurance relationship." Id., 459.

The reasoning of *Doucette* further supports the rationale of *Boynton* v. *New Haven,* supra, 63 Conn. App. 828. *Doucette* acknowledged that self-insurance is a misnomer because it involves no transfer of risk, and an entity that chooses to retain its own risk is not thereby transformed into an "insurer" for purposes of our insurance statutes. *Doucette* v. *Pomes,* supra, 247 Conn. 457. Because self-insurance is, nonetheless, the *functional* equivalent of commercial insurance; see *Hertz Corp.* v. *Federal Ins. Co.,* 245 Conn. 374, 378 n.4, 713 A.2d 820 (1998); when an entity is self-insured, it *functions* as both insurer and insured. The writing requirement of § 38a-334-6 (d) (1) (B) of the Regulations of Connecticut State Agencies provides that an insurer must give notice to its insured that any liability payments will be reduced by workers' compensation benefits by incorporating such notice into a policy. A self-insurer, as a single entity, however, does not enter into a policy with itself. To require the defendant, "wearing its hat as insure[r]"

to create a writing "with itself, wearing its hat as insure[d]," with respect to § 38a-334-6 (d) (1) (B) of the Regulations of Connecticut State Agencies is untenable. *Boynton* v. *New Haven*, supra, 828. We, therefore, conclude that the writing requirement of § 38a-334-6 (d) (1) (B) of the Regulations of Connecticut State Agencies does not apply to self-insurers.

We now look to our General Statutes to determine whether they require a self-insured municipality to provide a writing to reduce the limits of its uninsured motorist coverage by the amount of compensation benefits paid. In doing so, we are mindful of the rule that "[i]t is not the function of courts to read into clearly expressed legislation provisions which do not find expression in its words . . . ." (Citation omitted.) *International Business Machines Corp.* v. *Brown*, 167 Conn. 123, 134, 355 A.2d 236 (1974).

Section 38a-371 (a) (1) of our General Statutes requires the owner of a private passenger motor vehicle registered in this state to provide security pursuant to a statutory scheme, which includes uninsured motorist coverage. See footnote 7. There are two ways in which the owner of a passenger motor vehicle may provide the required security. An owner may acquire "*a policy of insurance* . . . issued by or on behalf of an insurer . . . ." (Emphasis added.) General Statutes § 38a-371 (b); see footnote 7. The required security also "may be provided by *self-insurance* . . . ." (Emphasis added.) General Statutes § 38a-371 (c); see footnote 7.

Any person who registers "more than twenty-five motor vehicles . . . may qualify as a self-insurer by obtaining a certificate of self-insurance" from the insurance commissioner. General Statutes § 14-129; see footnote 6. "The [insurance] commissioner may, in his discretion, upon the application of such person, issue a certificate of self-insurance when he is satisfied that

such person is possessed and will continue to be possessed of ability to pay judgments obtained against such person." General Statutes § 14-129 (b). "A municipality may provide the security required under this section by filing with the commissioner a notice that it is a self-insurer." General Statutes § 38a-371 (c).

A close examination of the words of the statutes by which a municipality may self-insure its fleet of passenger vehicles demonstrates that the statutes do not require such a municipality to create a writing to reduce the amount of its uninsured motorist coverage by the amount of compensation benefits paid to an employee. We, therefore, will not impose such a requirement on a self-insured municipality.

Last, we are aware that in the not too distant past, the exclusivity provision of the Workers' Compensation Act; General Statutes § 31-284 (a); was deemed to preclude an employee from seeking uninsured or underinsured motorist benefits from his or her employer. See *Bouley* v. *Norwich*, 222 Conn. 744, 755, 610 A.2d 1245 (1992); *CNA Ins. Co.* v. *Colman*, 222 Conn. 769, 773, 610 A.2d 1257 (1992). In legislatively overturning those cases, the General Assembly enacted § 38a-336 (f), which provides: "Notwithstanding subsection (a) of section 31-284, an employee of a named insured injured while occupying a covered motor vehicle in the course of employment shall be covered by such insured's otherwise applicable uninsured and underinsured motorist coverage."

*Conzo* v. *Aetna Ins. Co.*, supra, 243 Conn. 677, held that the provisions of § 38a-336 (f) apply to self-insured employers as well as to employers whose compensation coverage was secured by means of commercial insurance. In doing so, our Supreme Court cited the statute's legislative history, quoting Representative Richard D. Tulisano: "I just note that we have always understood

that the workers' comp[ensation] carriers had a lien on any proceeds . . . ." (Internal quotation marks omitted.) Id., 685. Although the intent of the legislature is to permit self-insured employers to provide uninsured motorist coverage, they are entitled to recover the compensation benefits paid an employee injured by an uninsured motorist.

For all of the foregoing reasons, we conclude that the defendant was not required to create a writing to reduce its uninsured motorist coverage by the amount of the compensation benefits that were paid to the plaintiff.

The judgment is affirmed.

In this opinion the other judges concurred.